E–PASS TECHNOLOGIES, INC. Plaintiff,

v.

MICROSOFT, INC., and Compaq Computer Corporation, Defendants.

No. CIV.A.H 02 0439.

United States District Court, S.D. Texas, Houston Division.

Aug. 4, 2006.

George Pappas, Richard Rainey, and Edward Mathias, Covington & Burling LLP, Washington, DC, for Defendant Microsoft Inc.

John Allcock, Stanley Panikowski, Brian Fogarty, Erin Gibson, and Edward Sikorski, DLA Piper Rudnick Gray Cary, San Diego, CA, for Defendant Compaq Computer Corporation.

Gregory Fleesler, John Madden, Michael Pospis, and Stephen Weiss, Moses & Singer LLP, New York, and Robert Leighton Lipstet, Lipstet & Hirsch LLP, Houston, TX, for Plaintiff E–Pass Technologies, Inc.

## MEMORANDUM AND ORDER

HOYT, District Judge.

### I. INTRODUCTION

Before the Court are the opposing briefs and motions of the defendants, Microsoft Corporation ("Microsoft") and Compaq Computer Corporation (now, "HP or Hewlett Packard Corporation") and plaintiff, E–Pass Technologies, Inc. ("E–Pass"), encompassing the defendants' motions for summary judgment of non-infringement of claim 19 of U.S. Patent No. 5,276,311 ("the '311 patent'") and the plaintiff, E–Pass's motion for summary judgment to dismiss defendants' counterclaims of invalidity and affirmative defenses of inequitable conduct. After considering the motions, responses, the pleadings, the arguments of counsel and the applicable law, this Court finds that the defendants' motions for summary judgment are well-taken and should be granted. Because the Court grants the defendants' motions, it is unnecessary for the Court to address the plaintiff's motion for summary judgment concerning the defendant's counterclaims and affirmative defenses.

### II. Factual History

This is a patent infringement action in which the plaintiff, E–Pass claims that the defendants Microsoft and HP have directly infringed its '311 patent and induced infringement of the same. On February 6, 2002, E–Pass filed its original complaint in this action, asserting claims of direct, in-

ducement, and contributory infringement on the part of Microsoft, and direct and inducement of infringement on the part of HP. At the conclusion of discovery, the issues had been narrowed to the claims of inducement of method claim 19 of the '311 patent against Microsoft and direct and inducement of infringement against HP.

The '311 patent is entitled "Method and Device for Simplifying the Use of a Plurality of Credit Cards, or the Like." The '311 patent describes a method for storing information from various individual credit cards in a single electronic multi-function card, allowing the user the convenience of carrying only the single multi-function card. In this action, E–Pass asserts infringement of its method claim 19 of the '311 patent by certain HP hand-held Personal Digital Assistants or "PDAs" and by Microsoft software that enables the PDA to function in the manner claimed by the '311 patent. Claim 19 of the '311 patent teaches, "[t]he method according to claim 1 further comprising the steps of storing a personal signature of the user on a central computer of the party issuing the data source and comparing the personal signature produced by the user with said stored personal signature to verify use of said card." E–Pass has accused 77 HP hardware models and 23 versions of Microsoft's operating software of infringing the '311 patent. Accordingly, this Court considered the matters of infringement brought forward by E–Pass' claims.

### III. Contentions

HP contends that the accused devices are not "cards" within the meaning of the '311 patent. HP also contends that E–Pass has presented no legitimate evidence of inducement or actual infringement of claim 19 of the '311 patent. Further, HP contends that the decision of a court in the Northern District of California involving E–Pass's litigation with Palm, Inc., operates to collaterally estop E–Pass from as-

serting its claims of infringement. In this regard, HP contends that E–Pass is re-litigating the factual issue of infringement of the claims of the '311 patent because the devices have the same or materially similar physical and dimensional characteristics of the prior accused devices.

In parallel, Microsoft contends there is no evidence of direct infringement. Microsoft contends that the PDAs are not "cards" as required by claim 19 and that E–Pass has not produced any evidence that Microsoft's accused software is used on other devices that are "cards" as required by claim 19. Moreover, Microsoft contends the evidence fails to establish that anyone has ever used Microsoft's accused software to practice each step required by claim 19. Microsoft also contends that there is no evidence of inducement. Specifically, Microsoft contends that no evidence exists showing that Microsoft instructed or otherwise induced use of its software on the accused device, instructed anyone to practice the steps of claim 19, or instructed or induced others to store passwords at a central computers for comparison or verification as taught by claim 19.

On the other hand, E–Pass argues that genuine issues of material fact exist as to whether HP has induced infringement. E–Pass argues that a factual issue arises as to whether the PDA, and other accused devices, constitute "electronic multi-function card" either literally or under the doctrine of equivalents. Additionally, E–Pass argues that fact issues exist as to whether any users of electronic multi-function cards has carried out the steps of claim 19 as a result of using the software of Microsoft. Finally, E–Pass argues that collateral estoppel is inapplicable as a matter of law because the California case did not "actually decide" the issues of infringement or inducement.

## IV. Statement of Law

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate only where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed.Cir.2004). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 1325–26. The patentee bears the burden of establishing infringement during trial, and thus, in moving for summary judgment, the defendants are burdened with the necessity of establishing a deficiency concerning an element of the patentee's infringement claim. *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 An accused product literally infringes a patent claim only if it embodies each and every limitation of the claim. *V–Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed.Cir.2005). "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." *Aquatex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed.Cir. 2005).

 In order to succeed on a claim of inducement of patent infringement under 35 U.S.C. § 271(b), "the patentee must show, first, that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed.Cir.2005). The elements of inducement must be proven by a preponderance of the evidence. *Warner–Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 418 F.3d 1326, 1341 n. 15 (Fed.Cir.2005). Hence, questions of infringement are questions of fact. *Union Carbide Chemicals v. Shell Oil Co.*, 425 F.3d 1366, 1372 (Fed.Cir. 2005).

## V. Discussion

### A. Was there Direct Infringement by HP?

This Court is presented with the often assigned task of scrutinizing the merits of a plaintiff's case under the vehicle of Rule 56(c) summary judgment. Within the context of patent proceedings, the examination takes on the added complexities of technological innovation, an abundance of documentation and evidence, conflicting expert reports and perhaps an application of unsettled law. The present matter does not give rise to such occurrences. Here, the Court is presented with a simpler proposition.

E–Pass has alleged that HP's accused devices induce and literally infringe claim 19 of the '311 patent and that Microsoft's accused software and instruction manuals induce infringement of claim 19 of the '311 patent. Claim 19 of the '311 patent is a dependent claim and, therefore, requires all of the steps of claim 1 upon which it depends plus additional steps. Thus, to sustain their motion for non-infringement,

HP and Microsoft must show only that an element of E–Pass's claim is lacking thereby establishing non-infringement. Claim 19 of the '311 patent requires "storing a personal signature of the user on a central computer of the party issuing the data source and comparing the personal signature produced by the user with said stored personal signature to verify use of said card."

HP's accused devices and Microsoft's software may not constitute an infringing multi-function card. However, the dispositive issues within this suit are mostly addressed when the Court assumes, without deciding, that the accused devices constitute such a "card." The Court will proceed on this assumption. Under the Federal Circuit's framework, expressed in *MEMC Electronic Materials, Inc.*, a patentee is first required to make a showing of direct infringement. 420 F.3d at 1378. It is axiomatic that "the sale of devices that may be used to practice a patented method cannot infringe without proof of direct infringement." *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1349–50 (Fed.Cir.2000). Further, "[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed.Cir.2005). Thus, "[a]n accused device cannot infringe, as a matter of law, if even a single limitation is not satisifed." *Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir.1998).

■ The issue presently before this Court is whether any limitation in claim 19 may not be satisfied by the accused software. Federal Circuit precedent instructs that failure to maintain every limitation is a basis to grant a motion for summary judgment against the patentee. Central to this issue, HP and Microsoft have alleged that there is no evidence that any product manufactured by HP, using Microsoft software meets claim 19's limitations requiring comparing signatures "to verify use of said card." Nevertheless, E–Pass argues that the promotional and instructional materials directed at consumers who purchase the accused devices, enables a use capable of infringing claim 19 of the '311 patent. After careful consideration of all evidence of record, the Court is of the opinion that the promotional and instructional materials do not teach a method that enables infringement of the '311 patent.

All parties agree that the plain language of claim 19 requires a potential infringer to engage in a multi-step process in order to infringe the method claim of the '311 patent. The process is one that requires the storage of the personal signature of the user on a central computer issuing the selected data source, and the comparison of that personal signature with the stored signature for the purposes of "verifying said card." The plain language of claim 19 demonstrates that the process is burdened with the limitation of verifying the use of the multi-function card.

E–Pass's agrees that a fair reading of claim 19 provides an avenue for the user to store a personal identification or "signature" with the remote source and further requires verification of use of the multi-function card by comparing the aforementioned stored signature with the signature "produced" by the "user." Nevertheless, E–Pass contends that the verification process claimed within claim 19 enables the user of the secure electronic wallet to transfer data from the remote data source for storage, selection and display on the device. E–Pass's view is made with particular reliance upon the expert opinion of Professor La Porta. In the Court's opinion, such reliance is misplaced.

This Court finds no place in Professor La Porta's report that speaks to the plain

language requirement of the verification of the card. Professor La Porta opines concerning the desirability of having such a feature for a business user, thereby, controlling access to certain servers or files while maintaining security and privacy in on-line communications. Professor La Porta also opines that even the general user would appreciate such security features. Beyond such statements, E–Pass has not produced any evidence of direct infringement, and Professor La Porta admits that he is unaware of anyone who has practiced the method of claim 19. Likewise, the inventor and principal of E–Pass admitted that he was unaware of anyone having practiced all the steps of claim 1, on which claim 19 depends. Hence, there is no evidence of direct infringement.

■ While lack of evidence of direct infringement is not dispositive, the circumstantial or indirect evidence of infringement also fails to support infringement of the '311 patent. The evidentiary shortfall occurs here in that the accused devices and software do not operate in the fashion described and directed by claim 19 of the '311 patent. There is no indirect evidence that the use of the accused HP devices, in conjunction with the accused Microsoft software, results in the practice of the claimed method of selecting data. This conclusion is supported by uncontroverted testimony.

Expert witness, David Johnson, highlights the fact that the mere act of accessing electronic mail or browsing the internet by using the accused devices and software does not require or result in the verification process taught in claim 19. The accused devices merely permit the user to access an account upon a central server which, itself, conducts the process of verification of the personal signature for entry into the user's account. A user might select and display data utilizing any number of devices including, for example, a laptop computer. Thus, the act of comparison, while "verifying" access by the user to a particular account or data source, does not verify "use of said card" as required by the claim language. This is so because the verifying, in this instance, takes place independently of the device used.

In practice, the Court imagines a situation where a user performing the method recited in claim 19 would require a third-party information provider to enable certain security and/or access features. According to claim 19, third-party security and/or access features must include the selection of a personal access code for a given user, and the storage of that code on the third-party's central computer system. After the user created a password and username, the third-party's computer system, on which access codes or personal signatures are stored, would permit entry only after comparing the username and password with those previously saved on its central computer system. However, this process does not occur when using HP devices and Microsoft software. Instead, the third-party's central computer system verifies only the entry of a password or personal signature to permit access to its system. Examination of a myriad of websites and email interfaces fails to show a final verification step that confirms the "use of said card." Hence, this Court is of the opinion that no direct or indirect infringement occurs by the use of the accused HP devices in concert with Microsoft software.

**B. Was there Inducement by Microsoft and HP?**

■ Claim 19 of the '311 patent requires "storing a personal signature of the user on a central computer of the party issuing the data source and the comparing of that personal signature when produced

by the user with a stored personal signature to *verify use of said card*" (emphasis added). The plain meaning of the language of the card-verification limitation requires that the entity that is the source of the data being accessed verify *use of the card itself.* However, the accused devices are not used in this manner nor does HP or Microsoft teach that its software may be used in this manner. Indeed, the evidence fails to show that this step is performed in a single E–Pass hypothetical use scenario, and E–Pass does not directly address this lack. Instead, E–Pass contends that claim 19 may be infringed by the mere storing and displaying of information from the internet or e-mail using a device of requisite size. E–Pass relies primarily on Professor LaPorta's report for this view. In his report, Professor LaPorta states that "[a] user of an iPAQ 4705 [ (an accused device) ] carries out the steps of claim 19 when [the operator] uses the device, for example, to download e-mail from America Online...by accessing http://www.aol.com." E–Pass then asserts that instructions by Microsoft regarding the on-line functionality of its software support its contention that Microsoft actively induces others to infringe.

While E-pass correctly characterizes the nature of Microsoft's instructions regarding on-line functionality, the Court is of the opinion that claim 19 requires far more than general internet and e-mail capabilities-namely, providing a security feature by verification of the "use of *said card.*" The '311 patent explains the importance of the card-verification procedure. In every example disclosed, the multi-function card itself is physically present at the time the two signatures are compared so that use of the card can be verified. *See, e.g.,* '311 patent, col. 9, ll. 26–37. E–Pass speculates that a user could download information using the accused devices and software but no evidence has been presented in any form that internet and e-mail capability,

standing alone, "verif[ies] use of said card" as required by claim 19. Further, Professor LaPorta fails to cite to a single instance that demonstrates that verification of a card is performed. Simply accessing the internet and e-mail through the use of on-line functionality does not encompass every limitation of claim 19. Indeed, if it did, the Court can envision that the latest versions of small form-factor tablet notebook computers would be caught in the web of the '311 patent.

It is well-established that "[t]he patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents." *V–Formation, Inc.,* 401 F.3d at 1312. This Court finds that E–Pass has not made such a showing. As a matter of law, without direct infringement of the '311 patent, E–Pass' legal claims of inducement against HP and Microsoft must also fail. *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 (Fed.Cir.2005).

### C. E–Pass' Motion for Summary Judgment to Dismiss Defendant's Affirmative Defenses and Counterclaims

Upon separate motion, E–Pass has requested that this Court dismiss HP and Microsoft's affirmative defenses and counterclaims that the '311 patent is invalid under 35 U.S.C. §§ 102 and 103, and dismiss HP and Microsoft's affirmative defenses that the '311 patent is unenforceable due to inequitable conduct. In light of the findings of non-infringement, the Court determines that E–Pass's motion to dismiss Microsoft's counterclaims and affirmative defenses is rendered moot.

### VI. Conclusion

Accordingly, it is hereby

**ORDERED** that Microsoft Corporation and Hewlett Packard Corporation's Mo-

tions for Summary Judgment of Non–Infringement are **GRANTED.** It is further,

**ORDERED** that E–Pass Technologies, Inc.'s Motion for Summary Judgment Dismissing Defendants' Affirmative Defenses and Counterclaims of Invalidity and Dismissing Defendants' Affirmative Defenses of Inequitable Conduct is **DENIED** as moot.