NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1604

E-PASS TECHNOLOGIES, INC.,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant-Appellee,

and

COMPAQ COMPUTER CORPORATION
(now known as Hewlett-Packard Company),

Defendant-Appellee.

Stephen N. Weiss, Moses & Singer LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief were Gregory J. Fleesler, Michael J. Pospis, and Amanda J. Schaffer.

George F. Pappas, Covington & Burling LLP, of Washington, DC, argued for defendant-appellee, Microsoft Corporation. With him on the brief were Richard L. Rainey and Andrea G. Reister. Of counsel, on the brief was Isabella E. Fu, Microsoft Corporation, of Redmond, Washington.

Stanley J. Panikowski, DLA Piper US LLP, of San Diego, California, argued for defendant-appellee, Hewlett-Packard Company. With him on the brief were John Allcock, Edward H. Sikorski, and Brian M. Fogarty.

Appealed from: United States District Court for the Southern District of Texas

Judge Kenneth M. Hoyt

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1604

E-PASS TECHNOLOGIES, INC.,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant- Appellee,

and

COMPAQ COMPUTER CORPORATION
(now known as Hewlett-Packard Company),

Defendant-Appellee.

_____

DECIDED: May 2, 2007

_____

Before LOURIE, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

E-Pass brought this patent infringement action in the United States District Court for the Southern District of Texas, No. 4:02-00439, alleging that both Microsoft Corporation and Hewlett-Packard Company are liable for infringement of U.S. Patent No. 5,276,311 ("the '311 patent"). The district court granted summary judgment to both defendants, finding that neither defendant directly or indirectly infringed the '311 patent. E-Pass appeals, challenging the district court's claim construction. We affirm.

The '311 patent is entitled "Method and Device for Simplifying the Use of a Plurality of Credit Cards, or the Like." It is directed to providing a method and device for storing information from various sources, such as credit cards, on one multi-function card. According to the specification, the invention "provid[es] the advantage of considerable simplification for the individual user and enormous advantages as regards safety against forgery and, generally, abusive use." '311 patent, col. 2, ll. 38-41. Claim 1 of the patent reads as follows:

> A method for enabling a user of an electronic multi-function card to select data from a plurality of data sources such as credit cards, check cards, customer cards, identity cards, documents, keys, access information and master keys comprising the steps of:
>
> transferring a data set from each of the plurality of data sources to the multi-function card;
>
> storing said transferred data set from each of the plurality of data sources in the multi-function card;
>
> assigning a secret code to activate the multi-function card;
>
> entering said secret code into the multi-function card to activate the same;
>
> selecting with said activated multi-function card a select one of said data sets; and
>
> displaying on the multi-function card in at least one predetermined display area the data of said selected data set.

Claim 19, the only claim now asserted, is dependent on claim 1 and further requires the step of "storing a personal signature of the user on a central computer of the party issuing the data source and comparing the personal signature produced by the user with said stored personal signature to verify use of said card."

E-Pass asserts infringement of claim 19 by certain Personal Digital Assistants ("PDAs") sold by Hewlett-Packard as well as the Microsoft software that allegedly enables the PDA to perform the method of claim 19. Specifically, E-Pass asserts that claim 19 is infringed when a PDA is used to access data in an account on a central server that verifies a personal signature for entry into the user's account. E-Pass alleges that the PDA satisfies the "card" limitation in the claims. E-Pass has made the same assertion in other cases that have come before this court. E-Pass Techs. v. 3Com, 473 F.3d 1213 (Fed. Cir. 2007); E-Pass Techs. v. 3Com, 343 F.3d 1364 (Fed. Cir. 2003).

The district court granted summary judgment of noninfringement to Hewlett-Packard and Microsoft based on its construction of one of the claim limitations. Claim 19 requires a comparison of the personal signature of the user with a remotely stored signature to "verify use of said card." After examining the language of the claims and the specification, the district court construed that requirement to mean that the signatures must be compared for the purpose of verifying that it is the user's card that is being used when the personal data is being accessed. The court further found that the third-party servers that interact with Hewlett-Packard's PDAs when the accused actions are being performed do not differentiate among the devices that are being used to access the data. The servers verify only the user's identity, not whether the user is accessing the data on a PDA, a laptop, or some other device. Accordingly, the district court held that E-Pass could not show infringement of claim 19 by either Hewlett-Packard or Microsoft.

II

On appeal, E-Pass argues that the district court misconstrued the requirements of claim 19 when it found that the claim required the entity that compares signatures to verify the use of the card. Instead, according to E-Pass, the signature comparison is meant to verify the identity of the user, and the "verify use of said card" limitation of claim 19 should be treated as completely independent of whether the card is being used.

The plain language of the claim supports the district court's construction, not E-Pass's. The phrase "verify use of said card" indicates that the signature comparison is performed so as to verify that the card is being used. Sometimes claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005). This is such a case.

E-Pass argues that the signature comparison is meant to verify "the user's use of the [card]," and not the use of the card itself. In other words, E-Pass argues that it is the use to which the card is being put that is verified in claim 19, and that since the function of the card is to display the user's data at the request of the user, verification of that use involves verification of the user's identity. The problem with that argument is that to "verify use of said card" does not mean the same thing as to verify the identity of the user. To hold otherwise would be to rewrite the claim.

E-Pass also argues that verification through signatures personal to the user indicates that it is the identity of the user that is verified in the method step of claim 19. While it is true that verification of personal signatures effectively verifies the user's

identity, that does not mean the claim does not require the use of the card to be verified as well. Indeed, both the patent claims and the specification indicate that claim 19 includes the card verification requirement.

The other claims of the patent indicate that verifying "use of the card" means something other than simply verifying signatures, which is all claim 19 would require under E-Pass's construction. Claims 2, 3, 7, 8, and 9 discuss "verifying the personal signature[s]" or "verifying said stored signature" by comparing a live signature with a stored signature. In contrast, claim 10 refers to "verifying proper use of said card" by comparing signatures while claim 19 refers to "verify[ing] use of said card." The difference in text between claims 2, 3, 7, 8, and 9 on the one hand, and claims 10 and 19 on the other, suggests that claims 10 and 19 should be construed to require verification that the card is being used. The only difference between those two groups of claims appears to be that the first group of claims requires the stored signature to be stored on the card. Accordingly, verifying the signatures in those claims necessarily verifies the use of the card and the identity of the user simultaneously; without the card there would be no stored signature against which the live signature could be compared. Claims 10 and 19, on the other hand, do not require the signature to be stored on the card. Verification of signatures alone would not necessarily verify the use and presence of the card, as required by those claims, although it would still verify the user's identity.[1] Accordingly, a terminology change would be required if and only if the patentee wanted

---

[1] Claim 10 reads as follows: "The method of claim 1, including the further step of verifying proper use of said card by comparing the personal signature of the user with a stored signature." Claim 10 is indifferent regarding where the signature is stored; it therefore appears to include the embodiment recited in claim 19, in which the signature is stored with a third party.

to ensure that the use of the card was verified. Claims 10 and 19 contain such a terminology change, confirming the district court's construction of claim 19.

The specification provides further evidence that the language of claim 19 requires verification that the card itself is used, and not just verification of the identity of the user. As the district court noted, every embodiment in the specification requires that the card be used to complete the desired transaction. The patent describes three embodiments related to signatures: one in which the signature is stored on the card and verified by hand; one in which the signature is stored on a remote server and electronically or mechanically verified; and one in which the signature is stored on the card and electronically or mechanically verified. '311 patent, col. 5, ll. 11-14; col. 9, ll. 26-31; col. 9, ll. 48-50. In the first and third embodiments, the card must be present at the time of use to enable the signature comparison, and verification of the signatures necessarily verifies both the user and the use of the card. The description of the second embodiment, the embodiment captured by claim 19, also requires the card to be present before the signatures can be verified. As described in the specification, the card itself, in conjunction with a customized point-of-sale terminal, is used to "call up" the central database and retrieve the signature. Since the card is needed to retrieve the signature, comparing the signatures will verify both the use of the card and the identity of the user.

Additionally, in the description of the second embodiment—the only embodiment in which it might be possible to verify signatures without verifying the use of the card— the patent specifically indicates that the described process "verify[s] the inserted card." '311 patent, col. 9, ll. 30-31. Again, the card is verified in that case because the only

way to retrieve the signature stored by the third party is by using the card in the customized point-of-sale terminal. That singular description bolsters the pattern evidenced by the differences between those claims that "verify the card" and those that "verify the signatures." Throughout the patent, whenever the signature is not necessarily stored on the card the patent specifically indicates that the claimed method verifies the use of the card.

A requirement that the presence of the card be verified also makes sense in the context of the specification's description of the invention. One of the objects of the invention is "safety against forgery and, generally, abusive use." '311 patent, col. 2, ll. 38-41. Ensuring that the card is physically present and being used to access the user's data provides an extra measure of fraud prevention.

Since both the claims and the specification would lead a person of skill in the art to conclude that the language of claim 19 requires the party comparing the signatures to verify the use of the card itself, and not just the identity of the user, we hold that the district court correctly construed the disputed claim term. We therefore affirm the court's judgment.