[Nos. A127025, A127067. First Dist., Div. Three. Nov. 5, 2010.]

E-PASS TECHNOLOGIES, INC., Plaintiff and Appellant, v. MOSES & SINGER, LLP, et al., Defendants and Respondents.

**COUNSEL**

Rosen Saba, James R. Rosen and Adela Carrasco for Plaintiff and Appellant.

Duane Morris, Richard Hoffman, Robert L. Fineman; Nixon Peabody, Isabelle L. Ord; Keker & Van Nest, Elliot R. Peters, Wendy J. Thurm and Steven A. Hirsch for Defendants and Respondents.

**OPINION**

**POLLAK, Acting P. J.**—Plaintiff E-Pass Technologies, Inc. (E-Pass), appeals from a judgment of dismissal following the sustaining of a demurrer in favor of defendants Moses & Singer, LLP, Stephen Weiss, Squire Sanders & Dempsey, LLP, and Mark Dosker. The trial court sustained the demurrer on the ground that E-Pass's complaint for legal malpractice is subject to the exclusive jurisdiction of the federal courts because it raises a substantial issue of federal patent law. We disagree and therefore shall reverse the judgment.

### Factual and Procedural Background

Since approximately February 2000, E-Pass has been the owner by assignment of United States Patent No. 5,276,311 entitled, "Method and Device for

Simplifying the Use of a Plurality of Credit Cards, or the Like" (the '311 patent). The '311 patent "describes a method and device for storing information from various individual cards in a single electronic multi-function card." Beginning in February 2000, E-Pass, represented by defendants in the present action, filed four actions in federal district courts alleging that certain manufacturers and users of personal digital assistant devices (PDA's) had infringed upon its '311 patent.

### The Federal Patent Litigation

The following summary of the federal patent litigation is taken from the January 2007 decision of the Federal Circuit Court of Appeals. (*E-Pass Technologies, Inc. v. 3Com Corp.* (Fed.Cir. 2007) 473 F.3d 1213.) "On February 28, 2000, E-Pass filed a complaint for patent infringement against 3Com Corporation and Palm, Inc. (collectively, '3Com'). In it, E-Pass accused 3Com of inducing consumers to practice the steps of the patented method on its Palm VII and Palm VIIx personal digital assistant ('PDA') products. Following a claim construction that construed 'electronic multi-function card' to be '[a] device having the width and outer dimensions of a standard credit card with an embedded electronic circuit allowing for the conversion of the card to the form and function of at least two different single-purpose cards,' [citation], the district court granted 3Com's motion for summary judgment of noninfringement both literally and under the doctrine of equivalents [citation]. [¶] E-Pass appealed. On appeal, we held that the district court had erred by 'requiring the dimensions of a standard credit card.' [Citation.] We observed that 'the ordinary meaning of the word "card" here, as used in the phrase "electronic multi-function card," is the proper construction,' and we vacated and remanded to the district court to address the issue of infringement under the proper construction. [Citation.] Notably, we emphasized that 'it may be or may not be that the accused Palm Pilot devices literally infringe' under that construction. [Citation.] [¶] . . . [¶] After we remanded the action against 3Com, E-Pass filed two new infringement actions in the district court. It filed the first new action, Case No. 03-CV-4747, 2006 U.S. Dist. Lexis 95914, on October 22, 2003, against Visa U.S.A., Inc., and Visa International Service Association (collectively, 'Visa'). In that action, E-Pass alleged that Visa had infringed the '311 patent by using a Palm V PDA in two demonstrations in 2001. E-Pass filed the second new action, Case No. 04-CV-0528, 2006 U.S. Dist. Lexis 95914, against PalmSource, Inc., palmOne, Inc., and Handspring, Inc., on February 9, 2004. In the second new action, it made claims of direct, induced, and contributory infringement of the '311 patent based on three new PDA product lines—the Tungsten, Zire, and Treo lines—that had been introduced since the filing of the initial action. [¶] On March 17, 2006, the district court granted summary judgment of noninfringement as to all defendants. [Citation.] It rested its finding of noninfringement on two independent grounds. First, it held that even under a

broader construction of 'card,' none of the accused devices could infringe the 'electronic multi-function card' limitation. [Citation.] Second, it held that E-Pass had failed to adduce sufficient evidence to support a finding that any of the defendants or their customers had practiced all of the steps of the claimed method. [Citation.] Having demonstrated no instances of direct infringement, E-Pass could not prove liability for induced or contributory infringement." (*Id.* at pp. 1216–1217.)

On appeal to the circuit court, E-Pass argued that (1) the district court erred in finding that the defendant's devices could not infringe on E-Pass's patent and (2) the district court "ignored circumstantial evidence that the defendants or their customers practiced the steps of the claimed method." (*E-Pass Technologies, Inc. v. 3Com Corp., supra,* 473 F.3d at p. 1217.) With respect to E-Pass's first argument, the circuit court agreed with the district court's holding that based on the properties of the various devices, "no reasonable jury could find that the accused devices are 'cards.' "[1] (473 F.3d at p. 1220.) With respect to E-Pass's argument that the district court ignored its "circumstantial evidence of direct infringement," the circuit court noted that it had "no reason to believe that the district court ignored any of this evidence" and that "[e]ven when all the evidence that E-Pass cites is accounted for, its claim cannot survive summary judgment." (*Id.* at p. 1221.) In so ruling, the court reviewed the evidence submitted by E-Pass, including product manuals and various other documents. (*Id.* at p. 1222.) With respect to the product manuals, the court noted that "the evidence here shows, at best, that the Palm defendants taught their customers each step of the claimed method in isolation. Nowhere do the manual excerpts teach all of the steps of the claimed method together, much less in the required order. Accordingly, it requires too speculative a leap to conclude that any customer actually performed the claimed method." (*Ibid.*)

Thereafter, the district court required E-Pass to pay $2.3 million in attorney fees to the opposing parties. With respect to E-Pass's claim against Visa, the court concluded that E-Pass's choice of litigation strategy, including failing to

---

[1] The circuit court's opinion elaborates, "As the district court correctly observed, the accused devices are neither flat nor rectangular: 'They have buttons, joysticks and keyboards which project above the surface. They have screens which sit below the surface. Some have indented spaces holding a stylus which can be used on the device. They have projecting antennae. The Treo cell phone has a full QWERTY keyboard and a flip cover which sits at a 150 degree angle to the surface of the phone when it is open. . . . A review of the accused devices . . . shows that none of them meet the definition [of rectangular]. Corners and edges are fully rounded. The sides of the devices are generally curved, some convex, some concave, rather than straight. They have built-in or flip-up antennae which completely alter the straight line sides of a rectangle. Some have USB connectors which have the same effect.' [Citation.] Likewise, the accused devices are not 'piece[s] of stiff material,' [citation], but rather 'are all elaborate mixes of multiple pieces and multiple materials.' " (*E-Pass Technologies, Inc. v. 3Com Corp., supra,* 473 F.3d at p. 1220.)

present evidence to support its claim, warranted an award of attorney fees as a sanction. (*E-Pass Technologies, Inc. v. 3Com Corp.* (N.D.Cal. Nov. 14, 2007) 2007 U.S.Dist. Lexis 89642, p. *9.) The district court found that the litigation against PalmSource had a " 'history of questionable pre-filing investigation and a discovery strategy of unwarranted delay and obstruction,' " which supported a finding that the case was exceptional and justified an award of attorney fees against E-Pass. (*Id.* at p. *22.) Finally, with respect to the remaining Palm defendants (3Com, Palm and palmOne) the court found that E-Pass's litigation tactics were "abusive" and justified a fee award. (*Id.* at p. *26.) The circuit court affirmed the award in favor of each defendant and also concluded that a frivolous appeal taken by E-Pass against PalmSource justified additional fees. (*E-Pass Technologies, Inc. v. 3Com Corp.* (Fed.Cir. 2009) 559 F.3d 1374, 1377.)

In addition to the above litigation, E-Pass, represented by Moses and Singer and Weiss, filed similar litigation against Microsoft Corporation and Hewlett-Packard Company alleging that certain PDA devices made by Hewlett-Packard using software created by Microsoft also infringed the '311 patent. The district court granted summary judgment in favor of the defendants, finding that E-Pass could not show infringement under the court's construction of a specific claim limitation.[2] (*E-Pass Technologies, Inc. v. Microsoft, Inc., supra,* 444 F.Supp.2d 748, 752–753.) The circuit court affirmed the trial court's construction of the claim limitation, noting that the claim construction in that case involved " 'little more than the application of the widely accepted meaning of commonly understood words.' " (*E-Pass Technologies, Inc. v. Microsoft Corp.* (Fed.Cir. 2007) 231 Fed.Appx. 950, 952, 954.)

### The California Legal Malpractice Action

On January 9, 2009, E-Pass filed this legal malpractice action against defendant attorneys. The operative second amended complaint alleges causes

---

[2] The limitation requires " 'storing a personal signature of the user on a central computer of the party issuing the data source and the comparing of that personal signature when produced by the user with a stored personal signature to *verify use of said card.*' " (*E-Pass Technologies, Inc. v. Microsoft, Inc.* (S.D.Tex. 2006) 444 F.Supp.2d 748, 753–754.) The district court explained that, "[t]he plain meaning of the language of the card-verification limitation requires that the entity that is the source of the data being accessed verify *use of the card itself.*" (*Id.* at p. 754.) The court found that E-Pass had not produced any evidence of direct infringement because there was no evidence that anyone had practiced the necessary steps of the claim, including the limitation. (*Id.* at p. 753.) The court also found that there was no indirect infringement because there was no evidence that the use of the accused devices, in conjunction with the Microsoft software, results in the practice of the claimed method, including the limitation. (*Ibid.*) The court observed that "the evidence fails to show that this step [(verification of the use of the card)] is performed in a single E-Pass hypothetical use scenario, and E-Pass does not directly address this lack." (*Id.* at p. 754.)

of action for negligent misrepresentation, breach of fiduciary duty and negligence based on defendants' representation of E-Pass in the federal patent litigation. All three causes of action are based essentially on allegations that attorney defendants incorrectly advised E-Pass that it "would make more money suing prospective licensees than by negotiating licenses or deals with them" and failed to appreciate and disclose to E-Pass that there was no evidence to support its infringement claims. The cause of action for professional negligence alleges that defendants failed to meet the required standard of care. E-Pass alleges that as a result of defendants' misconduct, "E-Pass has suffered considerable economic damages including, but not limited to . . . substantial and avoidable legal fees and costs."

Defendants demurrered to the second amended complaint on the ground that the court lacks subject matter jurisdiction over the action because E-Pass's claims involve substantial issues of federal patent law. Following a hearing, the trial court sustained the demurrer. E-Pass filed a timely appeal.[3]

### Discussion

A demurrer is properly sustained where the court "has no jurisdiction of the subject of the cause of action alleged in the pleading." (Code Civ. Proc., § 430.10, subd. (a).) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

■ Under section 1338(a) of title 28 of the United States Code (section 1338), federal district courts have original and exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents" and under section 1295(a)(1) of title 28 of the United States Code, the federal circuit court has exclusive jurisdiction over "an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338." Section 1338 jurisdiction

---

[3] The trial court sustained the demurrer without leave to amend as to defendants Squire & Sanders and Dosker. Judgment was entered on October 29, 2009, and E-Pass filed a timely notice of appeal on November 12, 2009. E-Pass was granted leave to amend with respect to certain nonpatent related claims against Moses & Singer and Weiss, but E-Pass opted not to file an amendment and on November 20, 2009, after the time for amendment had lapsed, judgment was entered. On December 2, 2009, E-Pass filed a timely notice of appeal. The two appeals have been consolidated for all purposes.

extends to any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800, 809 [100 L.Ed.2d 811, 108 S.Ct. 2166].)

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.* (2005) 545 U.S. 308, 314 [162 L.Ed.2d 257, 125 S.Ct. 2363] the court confirmed that there is no " 'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims." The court advised "that the appropriateness of a federal forum to hear an embedded issue could be evaluated only after considering the 'welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.' [Citation.] Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." (*Ibid.*) In summary, the court concluded that the "question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Ibid.*)

E-Pass's complaint seeks to recover damages "caused by defendants' misconduct by misleading E-Pass into bringing claims which were never viable, by abandoning defendants' fiduciary duties, by gouging E-Pass with unreasonable attorney fees and costs and by subjecting E-Pass to liability for costs and fees of the prevailing parties in the underlying actions." The amended complaint alleges that defendants "failed to conduct a pre-filing investigation" and "failed to discover evidence in support of E-Pass's claims of infringement because . . . such evidence did not exist" and that defendants "knew or should have known that there was no legitimate evidence to support any claims asserted on behalf of E-Pass." E-Pass emphasizes that it is not arguing that it lost valuable claims in the underlying litigation as a result of defendants' litigation strategies. Rather, acknowledging that the claims were without merit and properly dismissed, E-Pass claims that "defendants breached their duties to E-Pass and fell below the standard of care by failing to disclose to E-Pass that there existed no foundational evidence [to support the actions], by failing to advise E-Pass to discontinue the underlying actions, and/or by negligently misrepresenting to E-Pass that legitimate foundational evidence existed." E-Pass asserts that "[w]ithout this basic factual evidence, [it] could not prevail on any of the patent infringement claims asserted in the underlying actions, regardless of the strength of any other aspect of E-Pass's

infringement claims." At oral argument, counsel for E-Pass expressly disavowed any challenge to the claim construction proffered and argued by defendant attorneys in the federal litigation. Counsel confirmed that E-Pass does not allege any negligence with respect to the manner in which defendant attorneys defined the scope of the patent. Rather, E-Pass alleges that defendant attorneys knew or should have known that they did not have sufficient evidence to support the claims being asserted.[4]

In California, "[t]he elements of a legal malpractice action are: '(1) the duty of the [attorney] to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the [attorney's] negligence. [Citations.]' [Citations.] The plaintiff has the burden of proving each of these elements." (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 396 [134 Cal.Rptr.2d 689].) "In addressing breach of duty, 'the crucial inquiry is whether [the attorney's] advice was so legally deficient when it was given that he [or she] may be found to have failed to use "such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." ' " (*Id.* at p. 397.) Thus, to prevail on its malpractice claim under California law, E-Pass must prove that a reasonable attorney would not have advised E-Pass to pursue the infringement litigation based on the evidence, or lack of evidence, that was then available and that E-Pass incurred significant damages as a result of the prosecution of the unsupported claims.

Defendants argue, "To prove breach of duty will require resolution of substantial questions of patent law because E-Pass must show that (1) there was no factual or legal basis for the claim construction that [defendants litigated]; and (2) there was no factual or legal basis for [defendant attorneys] to conclude that the defendants [in the patent litigation] had infringed E-Pass's patent, in light of the proposed claim construction."

Defendants cite numerous cases involving state law claims, including legal malpractice claims for the mishandling of patent applications or patent litigation, that provide apparent support for defendants' contention that such issues touching upon application of patent law place jurisdiction of the claim exclusively in federal court under section 1338. In each of those cases it was necessary to decide a material question of patent law in order to establish the plaintiff's right to recover on the state law claim. For example, in *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*

---

[4] We base our decision upholding state court jurisdiction on the limited scope of E-Pass's allegations, as acknowledged in its briefs and at oral argument. On remand E-Pass will be bound by the narrow construction proffered in this court.

(Fed.Cir. 2007) 504 F.3d 1262, 1266, the plaintiff alleged that errors made by its attorney in the course of prosecuting a patent application forced it to settle subsequent patent infringement litigation for less than the fair market value of the patents. The court held that the malpractice action fell within the exclusive jurisdiction of the federal court because the malpractice claim would require the plaintiff to prove it would have prevailed in the patent infringement litigation but for the lawyer's negligence. (*Id.* at p. 1269.) In *Immunocept, LLC v. Fulbright & Jaworski, LLP* (Fed.Cir. 2007) 504 F.3d 1281, 1284–1285, an allegation that an attorney inadequately drafted a patent claim, narrowing the scope of the patent's protection and thus allowing competitors to copy the claimed methods without risk of infringement, subjected the action to section 1338 jurisdiction. The action could not be resolved without determining the appropriate "patent claim scope," a substantial question of patent law. (*Id.* at p. 1285.) *Additive Controls & Measurement Systems v. Flowdata* (Fed.Cir. 1993) 986 F.2d 476, 478 involved a state law claim for business disparagement, based upon the defendant having warned the plaintiff's customers that the plaintiff's product infringed the defendant's patent. Jurisdiction was properly invoked under section 1338 because in order to recover the plaintiff was required to prove that its product did not infringe the defendant's patent. In *Hunter Douglas, Inc. v. Harmonic Design, Inc.* (Fed.Cir. 1998) 153 F.3d 1318, 1329, overruled on other grounds in *Midwest Industries, Inc. v. Karavan Trailers, Inc.* (Fed.Cir. 1999) 175 F.3d 1356, there was section 1338 jurisdiction over state law claims for injurious falsehood and violation of Business and Professions Code section 17200 because the plaintiff's allegation that the defendant asserted ownership of patents that were invalid or unenforceable required the plaintiff to prove patent invalidity or unenforceability. *Katz v. Holland & Knight* (E.D.Va. Feb. 12, 2009) 2009 U.S.Dist. Lexis 10721 was an action alleging that an attorney's intentional concealment and misrepresentation induced the plaintiff to settle a copyright infringement action for less than full value. The action was subject to section 1338 jurisdiction because the plaintiff could not recover without establishing the full extent of the plaintiff's rights under the copyright. In *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238 [107 Cal.Rptr.3d 373], a sister appellate court of this state recently held that there was exclusive federal jurisdiction over a legal malpractice action alleging that the defendant attorneys failed to properly file a patent application. The plaintiff's damages in that case could not be measured without determining the validity of the plaintiff's patent rights. (*Id.* at p. 251.)

There is a critically significant distinction between each of those cases and the situation here. In each of those cases, it was necessary to establish the validity, invalidity, or proper scope of a patent in order to establish liability or damages and causation. In each, "the plaintiff's right to relief necessarily

depend[ed] on resolution of a substantial question of federal patent law . . . ." (*Christianson v. Colt Industries Operating Corp., supra*, 486 U.S. at p. 809.) That is not true here. E-Pass's complaint does not rest on the assertion that defendant's negligence caused it to lose or fail to enforce patent rights that it was entitled to enforce. The complaint proceeds on the contrary premise that there was no infringement, as the federal court held in the underlying litigation, and that E-Pass was damaged by pursuing litigation that defendants, in the exercise of reasonable care, should have advised it not to pursue.

We assume, as defendants contend, that the determination concerning the insufficiency of E-Pass's evidence in the underlying federal actions is not binding on the parties in this action. (*Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1585 [50 Cal.Rptr.3d 166] ["where the underlying proceeding was decided by a trial court's ruling, that ruling will come under scrutiny in the malpractice case when the issue of what should have been the result of the underlying proceeding is addressed"]; *Dawson v. Toledano, supra*, 109 Cal.App.4th at pp. 396–397.) However, although defendants may not be precluded from arguing that the federal courts decided the issue incorrectly, that is not the issue that must be determined in this malpractice action. The issue in this case is not whether the evidence that E-Pass submitted in the federal proceedings was sufficient to support an inference that the defendants in the federal cases had practiced all of the steps of the patented method claimed by E-Pass and thus infringed its patent. The only question here in this respect is whether, in evaluating E-Pass's claim and the evidence that undisputedly was in the attorneys' hands, defendants used the skill and care that a reasonably careful attorney would have used in similar circumstances. (CACI No. 600.) There is no need for plaintiff or defendants to prove what the proper outcome of the federal litigation should have been. It will be sufficient for E-Pass to prove that a reasonable attorney would have realized that under the facts before it, there was no reasonable possibility of prevailing in the federal action. Defendants need only show that a reasonable attorney would have considered there to be a sufficient likelihood of prevailing to justify the litigation and that they properly advised E-Pass of the risk of failure.

Moreover, to the extent that defendants seek to prove that E-Pass was entitled to prevail in the infringement litigation, that is at most a matter of defense. Jurisdiction under section 1338 is to be determined from the allegations of the complaint and not from consideration of issues that are or may be asserted in defense of the plaintiff's claims. (*Christianson v. Colt Industries Operating Corp., supra*, 486 U.S. at p. 809.)

The trial of this matter undoubtedly will require extended testimony concerning the requirements of federal patent law. Experts assuredly will be

called to testify to the prevailing standard of care and to what a reasonable attorney would or would not have concluded regarding the sufficiency of the foundational evidence that was presented to the federal courts, and the likelihood of drawing the inferences necessary to establish E-Pass's claim. Nonetheless, the ultimate question for decision is what a reasonable attorney would have concluded under the circumstances, a question of state law properly within the jurisdiction of state courts, and not whether the federal defendants did in fact infringe E-Pass's patent. The legal question here is no different from that presented in other malpractice actions, whether a reasonable attorney would have pursued the underlying case, which is not a question of patent law.[5] Similarly, to prove damages E-Pass need not establish the recovery to which it would have been entitled if it had proved that its patent had been infringed. It need only show the attorney fees and other liabilities it incurred as the result of pursuing the litigation, and possibly the value of the opportunities it lost as a result of pursuing that course. That too does not require proving any issue of patent law.

*Lockwood v. Sheppard, Mullin, Richter & Hampton* (2009) 173 Cal.App.4th 675 [93 Cal.Rptr.3d 220], another recent California appellate court decision, is instructive. In that case, the plaintiff alleged that false representations made by the attorney representing parties that had infringed his patent caused the United States Patent and Trademark Office (USPTO) to reexamine his patents. (*Id.* at p. 680.) The plaintiff alleged that he was damaged "because he had to defend the reexamination and was unable to enforce his patent rights until the reexamination concluded several years later, with a finding reconfirming the patentability of the reexamined claims of the patents." (*Id.* at p. 686.) To prevail on his claims, the plaintiff would have to prove that the defendant attorneys "knew or should have known that its representations . . . were incorrect or misleading" and that but for the attorney's misrepresentations, "the USPTO would not have granted the request for reexamination." (*Ibid.*) The court observed that while the question of whether a reasonable patent attorney would have known that the alleged misrepresentations were incorrect or misleading "would require some knowledge and application of patent law (as well as an ability to understand highly technical data), it is not clear whether they involve such substantial questions of patent law that the claims would be subject to exclusive federal jurisdiction under section 1338." (*Ibid.*) The court concluded that there was exclusive federal jurisdiction only because whether the USPTO would have granted reexamination but for the misrepresentations presents a substantial question of patent law, requiring the court to "put itself in the position of a 'reasonable' patent examiner." (*Id.* at

---

[5] Contrary to defendants' suggestion, questions regarding claim construction in the Microsoft action do not present a substantial issue of patent law in the present case. As noted above, E-Pass does not assert that defendant attorneys were at fault in advancing the claim construction for which they argued unsuccessfully in the underlying action.

pp. 686–687.) In this case, as in *Lockwood*, the question of whether a reasonable patent attorney would have filed the underlying infringement actions requires knowledge of patent law, but does not require a determination of a question of patent law. Nor does the measurement of damages require the court to determine any question of patent law.

In a somewhat analogous case, the court in *Delta Process Equipment, Inc. v. New England Ins. Co.* (La.Ct.App. 1990) 560 So.2d 923, rejected the defendant's argument that the plaintiff's claim for professional malpractice was subject to section 1338 jurisdiction. In that case, the plaintiff alleged that the defendant attorney was "negligent in that he failed to timely file the patent application, he failed to make relevant inquiries and disclosures concerning prior sales of the system, and that he gave erroneous advice concerning the timing of the patent application." (*Id.* at p. 924.) The court found that there was no section 1338 jurisdiction because "[t]he plaintiff's right to relief in the instant case . . . does not necessarily depend on resolution of a substantial question of federal patent law, i.e. the validity of the patent. Even without a showing of the invalidity of the patent, the plaintiff may be able to prove damages and has therefore stated a cause of action under state law." (560 So.2d at p. 926.) The court explained, "The allegations of negligence asserted by plaintiff . . . support the plaintiff's theory that his patent rights were damaged, notwithstanding the validity of the patent which was issued. These acts of negligence by the defendant, if proven true could cause the plaintiff damages merely by creating an issue as to the validity of the patent. [¶] If, because of the defendant's negligence, the validity of the patent is questionable, it is certainly conceivable that the plaintiff would suffer a loss of business and be forced into litigation to assert the validity of its patent. The fact that the patent is ultimately upheld will not alleviate these damages." (*Ibid.*) In the present case, the absence of a necessary patent question is even clearer, since E-Pass's complaint does not seek to prove, even in the alternative, that it should have prevailed in the infringement litigation.

Finally, to the extent that the subject matter of patent law is relevant to the determination of the professional negligence claim, it does not present a question of patent law that is substantial. (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., supra*, 545 U.S. at p. 314 ["the presence of a disputed federal issue . . . [is] never necessarily dispositive . . ."]; *Merrell Dow Pharmaceuticals Inc. v. Thompson* (1986) 478 U.S. 804, 813 [92 L.Ed.2d 650, 106 S.Ct. 3229] [noting "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"].) In *Singh v. Duane Morris LLP* (5th Cir. 2008) 538 F.3d 334, 339, the court acknowledged that the plaintiff's malpractice claim may involve a disputed issue of trademark law that was necessary to the resolution of the state-law claim. The court concluded, however, that

the action was not subject to federal jurisdiction because the federal issue was not substantial. The court explained that the federal issue—whether the plaintiff had sufficient evidence that his trademark had acquired secondary meaning—was "only tangentially relevant to an element of a state tort claim." (*Ibid.*) It did not present an important question of law. Rather, the issue is "predominantly one of fact" and "does not require 'resort to the experience, solicitude, and hope of uniformity that a federal forum offers.' "[6] (538 F.3d at p. 339; see also *Minton v. Gunn* (Tex.App. 2009) 301 S.W.3d 702, 709 [patent issue is not substantial where it "is predominantly one of fact, with little or no precedential value"].)

In *New Tek Manufacturing, Inc. v. Beehner* (2005) 270 Neb. 264 [702 N.W.2d 336, 346], the Nebraska Supreme Court rejected an argument that the malpractice action was subject to federal jurisdiction, finding that "[p]atent law is implicated only incidentally . . ." insofar as the measure of the plaintiff's alleged damages requires consideration of the hypothetical infringement of the patent. The court explained that "the precise question is not whether Orthman Manufacturing infringed on the '080 patent; rather, the question is whether, absent Beehner's negligence, New Tek would have been successful in an infringement action against Orthman. [Citation.] The construction and alleged infringement of the '080 patent is relevant only insofar as it helps us to determine who would have prevailed in that hypothetical action. Simply stated, it is difficult to see how this case arises under federal patent law when on the record before us, the only patent that has been construed, and of which infringement is alleged, has expired. The federal government has no interest in hypothetical determinations regarding an unenforceable patent." (*Ibid.*)[7]

In *Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.* (E.D.Mich. 2009) 666 F.Supp.2d 749, the court dismissed the action for lack of federal subject

---

[6] The court acknowledged that the federal interest in a patent action might be stronger than the federal interest in trademark law insofar as jurisdiction under section 1338 is exclusive with respect to patent, but not trademark, claims. (*Singh v. Duane Morris LLP, supra*, 538 F.3d at p. 340.) The salient point remains, however, that the mere presence of a federal issue is not necessarily sufficient to confer federal jurisdiction.

[7] In *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP, supra*, 183 Cal.App.4th at pages 249–250, the California Court of Appeal disagreed with the conclusion reached by the Nebraska court in *New Tek*, but the disagreement centered over the significance of federal patent law when the plaintiff's claim requires the determination of an issue of patent law, as it did in *Landmark Screens*. (*Id.* at p. 248 ["[T]he showing required of Landmark goes beyond the question of whether respondents' concealment and deception amounted to malpractice. To recover from respondents, Landmark would have to prove that but for their failure to disclose (or intentional concealment of) Kohler's negligence in filing the '916 divisional application, it would not have lost 'valuable and pioneering patent rights.' . . . The nature and extent of those patent rights present a substantial issue of federal patent law that is properly adjudicated in federal court." (fns. omitted)].)

matter jurisdiction. Recognizing that the "underlying patent issues—including inequitable conduct, claim construction and infringement—may well be complex," the court concluded that they "remain only a sub-inquiry, incidental to Plaintiff's primary allegations against the defendant attorneys. Moreover, those primary allegations revolve exclusively around missed filing deadlines, failure to communicate and professional negligence. As such, even if the allegations touch upon patent issues or require assessment of underlying patent disputes, they hardly raise substantial questions of federal law." (*Id.* at p. 751.)

■ To the extent patent law is relevant in this case, it is tangential, providing the background for deciding a question of state law. Because the outcome of the case will not rest upon a determination of any issue of federal patent law, the action is not subject to section 1338 jurisdiction.

## Disposition

The judgment is reversed and remanded. E-Pass is to recover its costs on appeal.

Siggins, J., and Jenkins, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 23, 2011, S188972. Werdegar, J., did not participate therein.