Vernon F. MINTON, Petitioner,

v.

Jerry W. GUNN, Individually, Williams Squire & Wren, L.L.P., James E. Wren, Individually, Slusser & Frost, L.L.P., William C. Slusser, Individually, Slusser Wilson & Partridge, L.L.P., and Michael E. Wilson, Individually, Respondents.

No. 10–0141.

Supreme Court of Texas.

Argued March 1, 2011.

Decided Dec. 16, 2011.

Thomas M. Michel, Griffith, Jay & Michel, LLP, Fort Worth, TX, Coyt Randal Johnston, Robert L. Tobey, Johnston & Tobey, P.C., Gregory W. Carr, Theodore F. Shiells, Carr, LLP, Dallas, TX, Robley E. Sicard, Griffith Jay & Michel LLP, Fort Worth, TX, Attorney for Petitioners.

Robert S. Harrell, Charles Bruce Walker, Fulbright & Jaworski L.L.P., Edward J. Murphy, Bruce C. Morris, Beirne, Maynard & Parsons, L.L.P., Mark Allen Waite, Gensler, Joseph D. Jamail, Jamail & Kolius, William Fred Hagans, Hagans Burdine Montgomery & Rustay P.C., Houston, TX, David E. Keltner, Kelly Hart & Hallman LLP, Fort Worth, TX, Stephen E. McConnico, Jennifer Knauth, Jane M.N. Webre, Cynthia Saiter Connolly, Scott Douglass & McConnico, L.L.P., Austin, TX, John Thomas Wilson IV, Kelly Hart & Hallman, P.C., Fort Worth, TX, for Respondents.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice JOHNSON, and Justice LEHRMANN joined.

This case arises out of patent infringement litigation. We consider whether federal courts possess exclusive subject-matter jurisdiction over state-based legal malpractice claims that require the application of federal patent law. The federal patent issue presented here is necessary, disputed, and substantial within the context of the overlying state legal malpractice lawsuit. Additionally, the patent issue may be determined without creating a jurisdictional imbalance between state and federal courts. We conclude that exclusive federal jurisdiction exists in this case. Accordingly, without reaching the merits of the legal malpractice claim, we reverse the court of appeals' judgment and dismiss this case.

## I. BACKGROUND

### A. TEXCEN and the '643 Patent

Petitioner, Vernon Minton, is a former securities broker. In early 1990, Minton

formed Texas International Stock Exchange, Inc. (TISE). A couple of years later, Minton began developing the Texas Computer Exchange Network (TEXCEN), a software program intended to operate over a telecommunications network. Minton developed the TEXCEN software to allow financial investors to "open[ ] brokerage accounts and execut[e] trades" at their own convenience "with all the investment technology the experts enjoy." After successfully establishing TEXCEN's commercial viability to R.M. Stark & Co. (Stark), a New York corporation and member of the National Association of Securities Dealers, Inc. (NASD), Minton asked Stark to employ TEXCEN in its business. In a January 1995 letter, Minton touted TEXCEN's utility to Stark's business, stating that "[a]fter five years of development, TEXCEN is scheduled to be on-line during March or April of this year." Stark agreed to lease TEXCEN from TISE, Minton's company. The lease permitted Stark to use TEXCEN "for the purpose of opening brokerage accounts and executing trades for individuals." In exchange, Stark agreed to pay TISE a monthly payment of the lesser of $2,000.00 or 30% of the gross revenues that Stark derived from using TEXCEN. The lease warranted that "TEXCEN will perform in a workmanlike manner." During the lease negotiations, Minton knew that Stark could not use TEXCEN or provide its customers with TEXCEN's benefits until NASD had reviewed and approved of the software. Despite this knowledge, Minton did not disclose to Stark that he intended to lease TEXCEN to Stark for experimental purposes.

More than one year after signing the TEXCEN lease, Minton filed a provisional application for a patent covering an interactive securities trading system that contained features very similar to TEXCEN. Minton's patent attorney drafted the pat-ent application with the aid of TEXCEN's software assistance manual, which Minton had provided him. The United States Patent and Trademark Office granted Minton a patent (the '643 Patent) on January 11, 2000.

## B. Underlying Patent Infringement Litigation

Subsequently, Minton filed a patent infringement action against NASD and The NASDAQ Stock Market, Inc. in the United States District Court for the Eastern District of Texas. *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 226 F.Supp.2d 845, 852 (E.D.Tex.2002). Minton's infringement suit alleged that the NASDAQ software system used in conjunction with NASD's services infringed the '643 patent. *Id.* at 854. At the time they filed the patent infringement suit on Minton's behalf, his attorneys had no knowledge of the TEXCEN lease. NASD and NASDAQ moved for summary judgment, alleging the '643 patent's invalidity under the "on-sale bar" provided in § 102(b) of the U.S. Patent Act. *Id.* at 852; *see* 35 U.S.C. § 102(b). Under the on-sale bar, a patent is invalid when the invention claimed by the patent is sold "more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). As an initial defense to the application of the on-sale bar, Minton pled that TEXCEN was a different type of software system than that claimed by the '643 patent. *Minton*, 226 F.Supp.2d at 855. The federal district court found Minton's argument unpersuasive and, accordingly, granted NASD and NASDAQ's motion for summary judgment and declared the '643 patent invalid. *Id.* at 852, 882–84.

Following the district court's decision, Minton asked his attorneys to consider a new defense to the on-sale bar—the experimental use exception. Under the experi-

mental use exception, a patent will not be invalidated by the on-sale bar if the purpose for which the patented invention was sold was primarily experimental rather than commercial. *See Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.,* 417 F.3d 1203, 1210 (Fed.Cir.2005). Minton obtained new counsel to brief the experimental use exception to the on-sale bar, and a motion for reconsideration arguing the experimental use exception was filed on Minton's behalf. When the federal district court denied Minton's motion for reconsideration, Minton appealed to the United States Court of Appeals for the Federal Circuit. *See Minton v. Nat'l Ass'n of Sec. Dealers, Inc.,* 336 F.3d 1373 (Fed.Cir.2003). On appeal, the Federal Circuit affirmed the federal district court's denial of reconsideration because the experimental use exception was not timely asserted during trial. *Id.* at 1379–81.

## C. Resulting State–Based Legal Malpractice Lawsuit

Minton filed a legal malpractice suit in state court against Respondents, the attorneys who had originally prosecuted his patent infringement litigation in the federal district court: Jerry W. Gunn, individually; Williams Squire & Wren, L.L.P.; James E. Wren, individually; Slusser & Frost, L.L.P.; William C. Slusser, individually; Slusser Wilson & Partridge, L.L.P.;

and Michael E. Wilson, individually (collectively "Gunn"). Minton alleged that Gunn's negligent failure to timely plead and brief the experimental use exception to the on-sale bar cost him the opportunity of winning his federal patent infringement litigation. Alternatively, Minton claimed that Gunn's negligence resulted in the pretrial dismissal of his patent infringement suit, costing him a potential settlement with NASD and NASDAQ of his claim for more than $100,000,000.00 in damages. Gunn, in turn, challenged the causation element of Minton's malpractice claim by filing joint no-evidence and traditional motions for summary judgment. Gunn's joint motions asserted that he was not obligated to raise the experimental use exception to the on-sale bar because, under the facts in existence at the time of the federal patent infringement litigation, the exception was neither a legally nor factually viable defense. Therefore, Gunn asserted that Minton could not establish as a matter of law that, but for his failure to plead the experimental use exception, Minton would have won his patent infringement lawsuit.

Based on the absence of any evidence that the primary purpose of the TEXCEN lease was experimental, the trial court granted Gunn's no-evidence motions for summary judgment and motions to dismiss and rendered a take-nothing judgment in his favor.[1] Minton appealed the judgment

---

1. Gunn filed two joint motions for summary judgment, with the second filing in response to Minton's first amended original petition. Both of Gunn's joint motions included no-evidence and traditional motions for summary judgment. Initially, the trial court granted Gunn's first no-evidence motion for summary judgment and partially granted Gunn's first traditional motion for summary judgment, but waited for additional briefing to dispose of the new claims alleged in Minton's amended petition. Minton's amended petition included a new damages theory, alleging that Minton would have settled the patent litigation or that Minton would have prevailed at trial and recovered damages of at least $100,000,000.00 if the federal district court had not dismissed his claim under the on-sale bar. In response to Gunn's second joint motion, Minton merely incorporated by reference his briefing and evidence filed in response to Gunn's first joint motion and offered no additional evidence or argument. After reviewing the additional briefing and summary-judgment evidence, the trial court granted Gunn's second joint motion for summary judgment.

to the Second Court of Appeals in Fort Worth. *Minton v. Gunn*, 301 S.W.3d 702 (Tex.App.-Fort Worth 2009, pet. granted).

Shortly after Minton filed his state court appeal, the United States Court of Appeals for the Federal Circuit decided *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed.Cir.2007). *Air Measurement* held that when "establishing patent infringement is a necessary element of a [state] malpractice claim stemming from alleged mishandling of ... earlier patent litigation, the issue is substantial and contested, and federal resolution of the issue was intended by Congress," and thus, federal courts possess exclusive "arising under" jurisdiction of the malpractice claim. *Id.* at 1273. Relying on *Air Measurement*, Minton argued that his malpractice suit arose under exclusive federal patent law jurisdiction and asked the court of appeals to dismiss his appeal for lack of subject-matter jurisdiction. Declining to follow the Federal Circuit's precedent, the court of appeals held that it had subject-matter jurisdiction over Minton's appeal and denied his motion to dismiss. *Minton*, 301 S.W.3d at 709. The court of appeals then affirmed the trial court's judgment, which granted Gunn's joint motions for summary judgment. *Id.* at 715. Minton filed a petition for review, which we granted. 54 TEX.SUP.CT.J. 538 (Feb. 8, 2011).

## II. ANALYSIS

### A. Subject–Matter Jurisdiction

Before we can reach the merits of Minton's claim, we must first determine whether we possess subject-matter jurisdiction to consider this appeal. *See Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 9 (Tex.2008) (considering jurisdiction before proceeding to determine the merits of the case). The question of "[w]hether a court has subject matter jurisdiction is a question of law that we review de novo." *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex.2010) (per curiam). In support of his view that this case arises under exclusive federal patent law jurisdiction, Minton relies chiefly on two Federal Circuit opinions. *Air Measurement*, 504 F.3d 1262; *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed.Cir.2007). Minton asserts that the court of appeals erred in rejecting these cases and in applying non-patent law cases to reach its holding. In reply, Gunn argues that this Court is not bound by the decisions of the Federal Circuit and that the two Federal Circuit opinions that Minton would have us follow fail to apply the federalism analysis required by the United States Supreme Court in cases involving the division of jurisdiction between state and federal courts. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Although we disagree with Minton's claim that non-patent law cases are inapplicable to the issues presented here, we do agree that the experimental use exception to the on-sale bar plays a substantial role within the context of Minton's state-based legal malpractice claim. *Cf. Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 117 (Tex.2004) ("To prevail on a legal malpractice claim, a plaintiff must show that ... [his attorney's negligence] proximately caused the plaintiff's injuries ...." (internal quotations omitted)); *Schaeffer v. O'Brien*, 39 S.W.3d 719, 720 (Tex.App.-Eastland 2001, pet. denied) (legal malpractice plaintiffs must prove a "case within a case"). We are also of the opinion that federal courts may entertain the application of this patent law concept within a state-based legal malpractice suit without disturbing the balance Congress has struck between state and federal judicial responsibilities. *See Grable*, 545 U.S.

at 313–14, 125 S.Ct. 2363. Accordingly, we are persuaded that exclusive federal patent law jurisdiction has been triggered and that we lack subject-matter jurisdiction to consider Minton's appeal.

■ Congress has provided federal courts jurisdiction over civil actions generally "arising under" federal law and also over actions specifically "arising under" any federal law relating to patents. *See* 28 U.S.C. §§ 1331 (providing general federal question jurisdiction), 1338(a) (providing patent law jurisdiction). One form of "arising under" federal-question jurisdiction stems from "state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312, 125 S.Ct. 2363. In *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the Supreme Court construed § 1338(a)'s "arising under" language to extend federal jurisdiction to any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." 486 U.S. at 808–09, 108 S.Ct. 2166. Whether a patent issue presented in a state-based action is substantial enough to trigger federal jurisdiction under § 1338(a) "must be determined from what necessarily appears in the plaintiff's [well-pleaded complaint] . . . unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Id.* at 809, 108 S.Ct. 2166 (internal quotations omitted).

Several opinions issued by the United States Supreme Court demonstrate federal courts' traditional reluctance to allow state plaintiffs to open "the 'arising under' door" by simply pleading a federal issue. *E.g.*, *Grable*, 545 U.S. at 313, 125 S.Ct. 2363;

*Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117–18, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (declining to define cases arising under federal law broadly and adopting instead "a selective process which picks the substantial causes out of the web and lays the other ones aside"); *Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912) ("A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends."). Based on its reluctance to open wide the federal courthouse doors, the Supreme Court has added several other requirements, in addition to substantiality, which must be satisfied before a federal patent issue presented in a state action may trigger exclusive federal patent jurisdiction.

■ In *Grable*, the Supreme Court refined the *Christianson* test and clarified the role that federalism concerns should play in the analysis of whether a state-based lawsuit with embedded federal issues arises under federal jurisdiction: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314, 125 S.Ct. 2363. "In other words, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v.*

*Duane Morris LLP,* 538 F.3d 334, 338 (5th Cir.2008) (interpreting *Grable* ). Although *Grable* is a non-patent law case, we may apply this test here to determine whether Minton's state-based legal malpractice claim arises under exclusive federal patent law jurisdiction. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 829–30, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002); *Christianson,* 486 U.S. at 808–09, 108 S.Ct. 2166.

While we are not bound by the holdings of the Federal Circuit, its opinions in *Air Measurement* and *Immunocept* are directly on point with the issues and facts presented by Minton's legal malpractice action. *Cf. Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993) (stating that only the opinions of the United States Supreme Court are binding on this Court). *Air Measurement* dealt with a state-based legal malpractice claim stemming from an underlying patent dispute. 504 F.3d at 1265. In the underlying patent litigation, Air Measurement filed several patent infringement suits and ultimately settled all of the cases. *Id.* at 1266. Based on information discovered with subsequent counsel, Air Measurement claimed it was forced to settle for an amount far below the market value of the patents due to errors committed by their original patent attorney during the patent application process. *Id.* Air Measurement alleged that the patent attorney failed to timely file the patent application within the one year on-sale bar, failed to disclose prior patents and other facts while prosecuting the patent applications, and committed other errors that led to the invalidity of Air Measurement's patents in the underlying litigation. *Id.* In the resulting state-based legal malpractice lawsuit, the Federal Circuit held that it possessed exclusive jurisdiction over the malpractice suit. *Id.* at 1269. The Federal Circuit explained that "[b]ecause proof of patent infringe-ment is necessary to show [Air Measurement] would have prevailed in the prior litigation, patent infringement is a 'necessary element' of [Air Measurement's] malpractice claim and therefore apparently presents a substantial question of patent law conferring [exclusive federal patent law] jurisdiction." *Id.* The *Immunocept* case involved a similar issue. 504 F.3d at 1282. There, the assignee of a patent brought a state-based legal malpractice action against the patent attorney originally hired to apply for and prosecute the patent at issue. *Id.* at 1283–84. The basis of the resulting malpractice suit was the patent attorney's claim-drafting error, which allegedly resulted in a lower level of protection for the patented technology. *Id.* at 1284–85. Again, the Federal Circuit determined that it had exclusive jurisdiction over the state-based legal malpractice suit "[b]ecause patent claim scope defines the scope of patent protection ... [and] is the first step of a patent infringement analysis," and is therefore "a substantial question of patent law." *Id.* at 1285.

To support his assertion that we should follow the Federal Circuit's holdings in *Air Measurement* and *Immunocept,* Minton criticizes the court of appeals' reliance on non-patent law cases and argues that we should look only to patent law cases because Congress has given federal courts exclusive jurisdiction over patent law. *See Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 682, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (involving a state lawsuit for reimbursement based on a provision of the Federal Employees Health Benefits Act); *Grable,* 545 U.S. at 310, 125 S.Ct. 2363 (involving a state quiet title action based on a federal tax statute); *Singh,* 538 F.3d at 338 (involving a state-based legal malpractice claim stemming from an underlying trademark dispute). We find this distinction to be unpersuasive

because the Federal Circuit applied these very cases to reach its holdings in *Air Measurement* and *Immunocept*. *See Immunocept*, 504 F.3d at 1285–86; *Air Measurement*, 504 F.3d at 1271–73. Moreover, in various contexts, the Supreme Court has applied the same rules and tests to patent law and non-patent law cases alike. *See, e.g., Holmes Grp.*, 535 U.S. at 829–30, 122 S.Ct. 1889; *Christianson*, 486 U.S. at 808–09, 108 S.Ct. 2166. Thus, we may look to both patent and non-patent law cases to determine whether exclusive federal jurisdiction exists. After applying the law to the facts and issues presented here, we determine each of the four *Grable* elements have been satisfied and that the court of appeals erred in concluding that exclusive federal patent law jurisdiction was not triggered by the federal issue embedded in Minton's legal malpractice lawsuit.

■ The first prong of the *Grable* test requires that the applicability of the experimental use exception to the on-sale bar be a necessary component in the determination of Minton's state-based legal malpractice claim. *See Grable*, 545 U.S. at 314, 125 S.Ct. 2363. In *Grable*, the Supreme Court held that the interpretation of a federal tax statute was a necessary element of the petitioner's state-based quiet title action because the success of his claim turned on that issue alone. *Id.* at 314–15, 125 S.Ct. 2363. Until the Supreme Court construed the language and determined the meaning of the federal statute, it could not determine whether the petitioner had successfully proven his state-law claim. *Id.* The Supreme Court has further explained that a federal element cannot be deemed necessary to a state-law claim if on the face of the well-pleaded complaint there are alternative theories upon which the claimant may recover. *Christianson*, 486 U.S. at 810, 108 S.Ct. 2166. Here,

Minton's trial court petition asserted only one theory in support of his legal malpractice claim—his attorneys' negligent failure to timely plead and brief the experimental use exception to the on-sale bar. Because Minton relies on a single negligence claim, there are no alternative theories on which he may establish his attorneys' legal malpractice. Moreover, a determination of whether Minton would have won his underlying federal patent infringement action necessarily requires a consideration of the legal and factual viability of the experimental use defense. *See Grable*, 545 U.S. at 314–15, 125 S.Ct. 2363; *Alexander*, 146 S.W.3d at 117; *see also Air Measurement*, 504 F.3d at 1270 (noting that in the case-within-a-case requirement for legal malpractice claims, the plaintiff had the burden of proving patent infringement, and whether the plaintiff would have prevailed against the on-sale bar defense raised in the underlying patent litigation is "not the sort of jurisdiction-defeating defense[ ] contemplated by [the Supreme Court in] *Christianson*" because it is "part of the malpractice causation element rather than the defense[ ] raised by [the defendant] in the" malpractice claim). If the experimental use defense would not apply under the facts of his case, for instance, Minton's attorneys' negligence could not have proximately caused the federal district court to invalidate the claims of the '643 patent. *See Grable*, 545 U.S. at 314–15, 125 S.Ct. 2363. Therefore, the applicability of the experimental use exception is a necessary element of Minton's state legal malpractice suit, and the first *Grable* prong is satisfied.

■ The second prong of the *Grable* test requires that the experimental use exception to the on-sale bar be disputed in Minton's state-based legal malpractice lawsuit. *See id.* at 314, 125 S.Ct. 2363. For obvious reasons, the legal and factual viability of the experimental use exception is

clearly in dispute. Minton's attorneys will be liable for legal malpractice if the experimental use exception would have been a viable defense to the on-sale bar and a defense that a reasonably prudent patent attorney would have raised. *See Alexander,* 146 S.W.3d at 117. Accordingly, to defeat the applicability of the experimental use exception, Gunn alleges Minton leased TEXCEN for a primarily commercial purpose. Minton, on the other hand, avers that the exception would have applied to save the '643 patent from invalidation because the TEXCEN system was not fully operational and, therefore, required extensive experimentation at the time he leased the software to Stark. This dispute regarding the applicability of the experimental use exception satisfies the second element of the *Grable* test.

■ The third prong of the *Grable* test demands that the applicability of the experimental use exception be a substantial issue within Minton's state-based legal malpractice claim. *See* 545 U.S. at 314, 125 S.Ct. 2363. Although we recognize that this question is close, we disagree with the court of appeals' holding that the experimental use exception is not a substantial element here. In determining whether a federal patent issue is a substantial element within the context of a state-based legal malpractice claim, we are informed by the Supreme Court's holding in *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). In *Empire,* an insurance carrier sued the estate of one of its deceased insureds in federal district court when it learned that the insured's estate had settled a state-based personal injury suit on his behalf. *Id.* at 683, 126 S.Ct. 2121. The carrier's federal suit sought reimbursement for the full amount of benefits it had paid to the insured after he sustained injuries in an accident. *Id.* The

carrier asserted that its reimbursement claims arose under federal jurisdiction because a preemption provision in the insured's insurance contract stated that federal law shall supersede any state law relating to benefits. *See id.* at 699, 126 S.Ct. 2121. The Supreme Court held that the operation of the preemption clause of the federal insurance contract was not a substantial issue because "the bottom-line practical issue [in the state-based reimbursement claim] is the share of [the] settlement properly payable to [the carrier]." *Id.* at 700–01, 126 S.Ct. 2121. Unlike *Grable,* where the construction and interpretation of a federal tax statute was the crux of the state-based lawsuit, even if the preemption provision in *Empire* allowed federal law to trump state law regarding reimbursement for benefits, the carrier could not win until it proved that it was entitled to reimbursement from the state-based personal injury recovery. *Compare Grable,* 545 U.S. at 315, 125 S.Ct. 2363, *with Empire,* 547 U.S. at 700–01, 126 S.Ct. 2121. We conclude that the experimental use exception presented here is more similar to the substantial federal issue presented in *Grable* than the insubstantial issue presented in *Empire.*

Following *Grable,* other courts have deemed federal patent issues substantial when the determination of the patent issue establishes the success or failure of an overlying state-law claim. *See, e.g., USPPS, Ltd. v. Avery Dennison Corp.,* 647 F.3d 274, 280–82 (5th Cir.2011) (holding that the state-law claims of fraud and breach of fiduciary duty in connection with a patent application presented a substantial federal patent issue because the causation element required the plaintiff to prove the underlying patentability of its invention); *Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.,* 631 F.3d 1367, 1372 (Fed.Cir.2011) (holding that in order for the plaintiff to prove its case-within-a-case

in the legal malpractice suit, the state-based malpractice action presented a substantial federal patent issue because it required a resolution on the merits of the patent infringement claims, which were not addressed by the federal district court in the underlying patent infringement litigation); *Davis v. Brouse McDowell, L.P.A.,* 596 F.3d 1355, 1361–62 (Fed.Cir. 2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 118, 178 L.Ed.2d 32 (2010) (holding that a state-based legal malpractice action presented a substantial federal patent issue where no patent had actually issued because of the attorney's alleged failure to timely file the patent application); *Immunocept,* 504 F.3d at 1285 (holding that the construction of patent claims, which define the amount of protection a patent receives against infringement, was a substantial federal issue within the context of a state legal malpractice suit based on a patent attorney's claim-drafting error); *U.S. Valves, Inc. v. Dray,* 212 F.3d 1368, 1372 (Fed.Cir.2000) (stating that a federal patent issue was substantial to a state breach-of-contract claim where a patent licensee had to construe the claims of the licensed patent to show that the licensor had sold products protected by the patent in contravention of a licensing agreement); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 986 F.2d 476, 477–78 (Fed. Cir.1993) (holding that a determination of patent infringement was a substantial federal issue within the context of a state-based business disparagement claim in which the plaintiff could not succeed until it showed that the defendant lied about the plaintiff having infringed its patent); *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP,* 183 Cal.App.4th 238, 107 Cal.Rptr.3d 373, 381 (2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1472, 179 L.Ed.2d 300 (2011) (finding exclusive federal question jurisdiction where the plaintiff's legal malpractice claim, stemming from the attorney's negligence in prosecuting the patent, required proof of a substantial issue of federal patent law). Similarly, to succeed on his state-based legal malpractice claim, Minton must establish that Gunn was required to raise the experimental use exception because it was a legally and factually viable defense to the on-sale bar and that Gunn's failure to do so proximately caused Minton to lose his federal patent infringement litigation. *See Alexander,* 146 S.W.3d at 117. Therefore, because the success of Minton's malpractice claim is reliant upon the viability of the experimental use exception as a defense to the on-sale bar, we hold that it is a substantial federal issue satisfying the third prong of the *Grable* inquiry.

■ Finally, the fourth *Grable* element requires that the determination of the viability of the experimental use exception be a question that a federal court may decide without upsetting the balance between federal and state judicial responsibilities. *Grable,* 545 U.S. at 314, 125 S.Ct. 2363. This final factor is perhaps the most important. *See id.* ("[T]he presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction."). Although we recognize that legal malpractice claims traditionally fall under the domain of state courts, we conclude that federal courts may decide this malpractice case without upsetting the jurisdictional balance between federal and state courts. *Compare USPPS,* 647 F.3d at 282 (finding federal-question jurisdiction in a state-based tort claim where the underlying proceedings involved substantial questions of *patent* law), *with Singh,* 538 F.3d at 338 (recognizing the importance of federalism considerations and holding a state-based legal malpractice resulting from an under-

lying *trademark* dispute did not meet the standard for federal jurisdiction).[2] In *Grable*, the Supreme Court held that allowing a federal court to have jurisdiction over the construction of the federal tax statute did not upset the congressionally approved balance of judicial responsibility because the federal government had a strong interest in having the tax statute applied consistently in the future by federal officials who are frequently charged with the duty of collecting delinquent taxes. *Grable*, 545 U.S. at 312–14, 125 S.Ct. 2363. In conducting the federalism analysis required under *Grable*, the Federal Circuit has recognized that federal courts also have a strong interest in having federal patent law applied uniformly. *See Immunocept*, 504 F.3d at 1285–86 (recognizing Congress's "intent to remove non-uniformity in the patent law, as evidenced by its enactment of the Federal Courts Improvement Act of 1982" (citing Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25)); *Air Measurement*, 504 F.3d at 1272 ("There is a strong federal interest in the adjudication of patent infringement claims in federal court because patents are issued by a federal agency."). Not only does the federal government have an interest in the uniform application of patent law, but so do litigants involved in patent law disputes. *See Immunocept*, 504 F.3d at 1285 ("Litigants will benefit from federal judges who are used to handling these complicated [patent law] rules."); *Air Measurement*, 504 F.3d at 1272 (stating that patent litigants will benefit from the "experience, solicitude, and hope of uniformity that a federal forum offers on federal issues" (quoting *Grable*, 545 U.S. at 315, 125 S.Ct. 2363) (internal quotation marks omitted)).

Gunn attempts to persuade us that the facts of this case cannot survive the *Grable* federalism inquiry because they are more similar to those considered by the Supreme Court in *Empire*. *See Empire*, 547 U.S. at 677, 126 S.Ct. 2121. As explained above, *Empire* involved a state cause of action for reimbursement based on a preemption provision contained within a federal health care act. *See id.* at 693, 699, 126 S.Ct. 2121. There, the Supreme Court determined that the federal health care statute was not a substantial element of the carrier's state reimbursement suit because the more important factor was the extent to which the carrier could attain

**2.** The dissent and Gunn's emphasis on the Fifth Circuit's holding in *Singh* is misplaced. Although *Singh* also involves a determination of whether exclusive federal jurisdiction over a state-based legal malpractice claim exists, that case is inapplicable to the question considered here. The federal issue in *Singh* arose under trademark law. *Id.* at 336. We have recognized that the distinction between patent and non-patent law cases is irrelevant to our consideration of whether a case arises under federal jurisdiction, however, the Fifth Circuit in *Singh* expressly declined to extend its jurisdictional holding to the area of federal patent law. *Id.* at 340 ("[W]e decline to follow or extend a recent opinion of the Federal Circuit, which found 'arising under' jurisdiction for a malpractice claim stemming from representation in a federal patent suit." (referencing *Air Measurement*, 504 F.3d at 1269)).

While limiting its *Singh* holding to the embedded federal trademark dispute, the Fifth Circuit noted the following: "It is possible that the federal interest in patent cases is sufficiently more substantial, such that it might justify federal jurisdiction. But we need not decide [the patent law issue], because it is not before us." *Id.* More recently in *USPPS*, the Fifth Circuit addressed the distinction between underlying trademark and patent disputes embedded in state-based claims. 647 F.3d at 282. In *USPPS*, the Fifth Circuit recognized the federalism concerns expressed in *Singh*, but distinguished *Singh*'s holding, which concerned a legal malpractice claim arising from an underlying trademark dispute, and adopted the Federal Circuit's *Air Measurement* holding of federal question jurisdiction for a state-law tort claim arising from an underlying patent litigation dispute. *Id.*

reimbursement for the medical bills it covered. *Id.* at 701, 126 S.Ct. 2121. When applying *Grable*'s federalism inquiry to the non-statutory issue of reimbursement, the Supreme Court stated that "it is hardly apparent why a proper federal-state balance would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum." *See id.* at 701, 126 S.Ct. 2121 (internal citations and quotations omitted).

At first glance, the fact that the experimental use exception to the on-sale bar is a product of case law, rather than statute, appears to warrant a determination that the experimental use exception, like the federal issue in *Empire*, does not survive the *Grable* federalism inquiry. *See, e.g., City of Elizabeth v. Pavement Co.,* 97 U.S. 126, 134–35, 24 L.Ed. 1000 (1877) (establishing the experimental use exception to the on-sale bar). However, courts applying this exception have noted that because the experimental use exception only operates within the context of the statutory on-sale bar, "the focus remains throughout the inquiry on application of the statutory bar itself." *EZ Dock v. Schafer Sys., Inc.,* 276 F.3d 1347, 1351–52 (Fed.Cir.2002); *see* 35 U.S.C. § 102(b). Accordingly, because we cannot determine the success of Minton's legal malpractice claim without focusing on the application of the on-sale bar, which is based directly in a federal statute, we are not convinced by Gunn's attempt to liken this case to *Empire*. The on-sale bar serves to invalidate patents issued by the federal government. 35 U.S.C. § 102(b). We agree with the Federal Circuit that when the validity of a patent is questioned, even if within the context of a state-based legal malpractice claim, the federal government and patent litigants have an interest in the uniform application of patent law by courts well-versed in that subject matter. *See, e.g., Immunocept,* 504 F.3d at 1285–86; *Air Measurement,* 504 F.3d at 1272.

Accordingly, Minton's malpractice claim satisfies the fourth prong of the *Grable* test.

■ Because this case satisfies all four elements of the *Grable* test, we hold that federal courts possess exclusive jurisdiction to determine Minton's state-based legal malpractice claim. Gunn and the dissent have predicted that this holding will cause all legal malpractice suits arising out of patent litigation to fall under the exclusive patent law jurisdiction of the federal courts. We do not foresee this result. Our opinion should only be construed as conferring exclusive federal patent jurisdiction based upon the specific facts of this case. In the future, just as Minton has done, any state litigant asserting a legal malpractice action to recover for damages resulting from his patent attorney's negligence in patent prosecution or litigation must also satisfy all four elements of the *Grable* test to place his claim under exclusive federal jurisdiction. In the context of state-based legal malpractice claims, plaintiffs will not always be able to meet such a burden. *See, e.g., Holmes Grp., Inc.,* 535 U.S. at 831, 122 S.Ct. 1889 (holding a patent-law counterclaim cannot serve as the basis for "arising under" jurisdiction); *Thompson v. Microsoft Corp.,* 471 F.3d 1288, 1291–92 (Fed.Cir.2006) (finding the state-law claim of unjust enrichment did not arise under § 1338 jurisdiction because the plaintiff could prevail on the claim by showing the defendant's unauthorized use of proprietary information without proving inventorship under U.S. patent laws); *Roof Tech. Servs., Inc. v. Hill,* 679 F.Supp.2d 749, 754 (N.D.Tex.2010) (explaining that a state legal malpractice action involving an attorney's "failure to meet deadlines and communicate with [his] client" and in which "[p]atent issues are merely floating on the periphery," did not trigger exclusive federal patent jurisdic-

tion); *Genelink Biosciences, Inc. v. Colby,* 722 F.Supp.2d 592, 601 (D.N.J.2010) (holding that where a state malpractice claim was based on missed deadlines, and not on the validity of the actual patent itself, there was no patent issue triggering exclusive federal patent law jurisdiction); *E– Pass Techs., Inc. v. Moses & Singer, LLP,* 189 Cal.App.4th 1140, 117 Cal.Rptr.3d 516, 521 (2010) (finding no federal-question jurisdiction where the ultimate question in the legal malpractice claim was not the attorney's negligence in the prosecution of the patent, but rather "that the defendant attorneys knew or should have known that [the plaintiff] did not have sufficient evidence to support the claims" they asserted on its behalf in the underlying litigation.).

### III. CONCLUSION

Because we determine that the application of the experimental use exception to the on-sale bar is a necessary, disputed, and substantial element of Minton's state-based legal malpractice claim, and because the federal courts are capable of addressing this issue without disrupting the jurisdictional balance existing between state and federal courts, we hold that Minton's claim has triggered exclusive federal patent jurisdiction. Accordingly, we do not reach the merits of Minton's claims, and we reverse the court of appeals' judgment and dismiss the case.

Justice GUZMAN filed a dissenting opinion, in which Justice MEDINA and Justice WILLETT joined.

Justice HECHT did not participate in the decision.

Justice GUZMAN, joined by Justice MEDINA and Justice WILLETT, dissenting.

Our system of justice has a "deep-rooted historic tradition that everyone should have his own day in court," *Martin v. Wilks,* 490 U.S. 755, 762, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (quotation marks omitted), but there is no right to a second day in a different court. By adopting the approach of the Federal Circuit instead of the United States Supreme Court, the Court allows a defeated litigant to undeservedly hit the "reset" button on his failed legal malpractice case. The defendants, having won on the merits in state court, must now repeat a no doubt costly and time-consuming defense all over again in federal court, a result not required by the mainstream of federal question jurisprudence.

In concluding that there is exclusive federal jurisdiction over this case, the Court principally relies on a pair of Federal Circuit cases, with additional support from a Fifth Circuit case. *See USPPS, Ltd. v. Avery Dennison Corp.,* 647 F.3d 274 (5th Cir.2011); *Immunocept, LLC v. Fulbright & Jaworski, LLP,* 504 F.3d 1281 (Fed.Cir. 2007); *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.,* 504 F.3d 1262 (Fed.Cir.2007). The two Federal Circuit opinions were written by the same judge, for the same three-judge panel, and issued on the same day. The Fifth Circuit's position in *USPPS* appears to have been primarily driven by those two opinions. Collectively, these opinions represent a novel method of determining federal question jurisdiction, and one which this Court should not adopt.

Contrary to the Federal Circuit's reasoning in *Air Measurement* and *Immunocept,* federal question jurisprudence requires a more nuanced approach than the version found in these two cases, and implicitly adopted today by this Court. The United States Supreme Court mandates that courts conduct a four-part inquiry before finding federal question jurisdiction in embedded federal issue cases. *See Grable*

& Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). More specifically, a persuasive Fifth Circuit precedent, conducting that very inquiry, indicates that a legal malpractice case that touches upon federal intellectual property law should nonetheless remain under the jurisdiction of state courts. See Singh v. Duane Morris LLP, 538 F.3d 334, 340 (5th Cir.2008). Yet, in Air Measurement and Immunocept, the Federal Circuit failed to conduct more than a cursory attempt at applying the Grable factors.

Only opinions of the United States Supreme Court are binding on this Court. See Penrod Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex.1993). Therefore, we are not required to follow the Federal Circuit's view of federal patent jurisdiction. We are, however, bound to follow the Supreme Court's pronouncements, id., and they fully support the conclusions drawn by the Fifth Circuit in Singh and the court of appeals' judgment in the instant case. The Supreme Court's federal question precedents require that we reject Minton's assertion of exclusive federal jurisdiction over this case, and, with the exception of Singh, the circuit cases on point are contrary to the Supreme Court's opinions and unpersuasive on this point of law. Because federal question jurisprudence does not require the result reached by the Court today, I respectfully dissent.

## I. Analysis

Unlike the courts of this state, federal courts are courts of limited jurisdiction, and thus "due regard for the constitutional allocation of powers between the state and federal systems requires a federal court scrupulously to confine itself to the jurisdiction conferred on it by Congress and permitted by the Constitution." In re Carter, 618 F.2d 1093, 1098 (5th Cir.1980). There are two main types of federal jurisdiction: diversity jurisdiction, and federal question jurisdiction, often also referred to as "arising under" jurisdiction because of the governing constitutional and statutory language. See ERWIN CHEMERINSKY, FEDERAL JURISDICTION 266 (5th ed.2007). Federal question jurisdiction is in turn subdivided into (1) cases in which federal law provides a cause of action, and (2) state-law claims that implicate a federal issue. Grable, 545 U.S. at 312, 125 S.Ct. 2363. It is this latter subtype, often referred to as "embedded" federal-issue cases, CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3562 at 187 (3d ed.2008), that is at issue here.

One area of federal question jurisdiction, encompassing both subtypes described above, is that covering federal intellectual property law, as established by section 1338(a) of the United States Code.[1] See 28 U.S.C. § 1338(a). Specifically, section 1338(a) gives federal courts jurisdiction over cases "arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." Id. That jurisdiction is exclusive for patent, plant variety protection, and copyright cases. Id. Speaking to patent cases particularly, the Supreme Court has explained that section 1338(a) applies:

[O]nly to those cases in which a well-pleaded complaint establishes either that

---

1. Although much of the Supreme Court's federal question jurisprudence is in the context of the more general federal question statute, 28 U.S.C. § 1331, sections 1331 and 1338 both have the phrase "arising under" as their operative language, and the Supreme Court applies section 1331 precedent to section 1338 cases. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); Air Measurement, 504 F.3d at 1271.

federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citations omitted).

The above quote is the point of departure for the Court today, and also for the Federal Circuit cases the Court relies on. However, the full inquiry when determining federal question jurisdiction is not so simple: the well-pleaded complaint must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314, 125 S.Ct. 2363. In other words, it is *not* enough that the federal issue constitute an element of the plaintiff's well-pleaded complaint. *See id.* at 313, 125 S.Ct. 2363 ("[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto."); *Singh*, 538 F.3d at 338 ("The fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction...."). Rather, the Supreme Court has laid out a four-element test for determining whether federal question jurisdiction is proper over a state-law claim with an embedded federal issue (such as this case): "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue

is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh*, 538 F.3d at 338 (interpreting *Grable*, 545 U.S. at 314, 125 S.Ct. 2363). Explicating the final element, the Supreme Court explains that "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts." *Grable*, 545 U.S. at 314, 125 S.Ct. 2363. The Supreme Court further requires: "[T]here must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Id.* As the Supreme Court explained, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312, 125 S.Ct. 2363.

*Grable* is a landmark case in this area of jurisprudence, and it should be the touchstone for any court's analysis of whether embedded question jurisdiction is proper. *See* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3562 at 197–99 (3d ed. 2008) ("In 2005, the Supreme Court issued its finest effort in this line of cases.... In *Grable*, the Court for the first time discussed comprehensively the relevant factors for assessing [embedded question jurisdiction].... *Grable* brings considerable clarity to what had been quite muddled."). I therefore turn to the analysis required of this Court by *Grable*.[2]

In this case, only the first of the *Grable* elements is potentially met; the other three are not. The federal issue here is

---

**2.** The Court makes a good faith effort of its own to apply *Grable,* but the outcome of that effort is incorrect because it is conducted

through the lens of *Air Measurement* and *Immunocept.*

neither disputed nor substantial, and the exercise of exclusive federal jurisdiction over cases such as this would disrupt the proper balance between the state and federal judiciaries intended by Congress. I address each element in turn.

### A. Federal Issue Is Not Disputed

First, the federal issue is not in dispute. The Court and the Federal Circuit have read this element of the *Grable* test as simply requiring some live controversy, effectively making it a mootness requirement. But a review of the roots of the element reveal its true meaning: for the federal issue to be "disputed" under *Grable*, there must be a controversy as to the " 'validity, construction, or effect' " of the federal issue. *Grable*, 545 U.S. at 315 n. 3, 125 S.Ct. 2363 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 570, 32 S.Ct. 704, 56 L.Ed. 1205 (1912)). The Supreme Court noted "the limiting effect of the requirement that the federal issue in a state-law claim must actually be *in dispute* to justify federal-question jurisdiction," and cited *Shulthis* as an example where "this Court found that there was no federal-question jurisdiction to hear a plaintiff's [state law] claim in part because the federal statutes on which [the claim] depended were not subject to 'any controversy respecting their validity, construction, or effect.' " *Id.* (quoting *Shulthis*, 225 U.S. at 570, 32 S.Ct. 704) (emphasis added).

Here, there is no such controversy. The experimental use exception is well-established in meaning and scope. *See Elizabeth v. Pavement Co.*, 97 U.S. 126, 134–35, 24 L.Ed. 1000 (1877) (establishing the exception in 1877); *Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1210–18 (Fed.Cir.2005) (applying it in its modern form). The parties do not dispute its meaning; they simply dispute whether it was available as a defense in the original patent infringement suit. And that dispute turns on whether the TEXCEN lease concluded between Minton and R.M. Stark & Co. was experimental or commercial in nature—a question to be resolved by reference to the lease and the conduct of the parties, rather than a disputed construction of federal law.

### B. Federal Issue Is Not Substantial

The federal issue is also not substantial. The Supreme Court has explained that federal question jurisdiction based on federal law being a "necessary element" of the complaint is limited to a "special and small category" of cases, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (citations omitted), and that "it takes more than a federal element 'to open the "arising under" door,' " *id.* at 701, 126 S.Ct. 2121 (quoting *Grable*, 545 U.S. at 313, 125 S.Ct. 2363). The Court emphasized that *Grable*, in which interpretation of a federal statutory notice provision was at issue, presented an almost purely legal issue, one whose resolution would both be dispositive in that case, and "controlling in numerous other cases." *Id.* at 700, 126 S.Ct. 2121 (citing *Grable*, 545 U.S. at 313, 125 S.Ct. 2363). It was also significant that *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute," thus making the issue " 'substantial.' " *Id.* (citing *Grable*, 545 U.S. at 313, 125 S.Ct. 2363). The Supreme Court has also drawn a line between federal statutory construction issues and other issues such as federal common law. In *Empire*, the United States asserted that the federal issue of whether an insurer's recovery of amounts paid to an insured as a result of an accident should take into account the insured's attorney's fees in obtaining the initial recovery. *Id.* at 701, 126 S.Ct. 2121. While the Supreme Court conceded that may be an issue, it

refused to find federal jurisdiction because "it is hardly apparent why a proper 'federal-state balance' would place such a non-statutory issue under the complete governance of federal law, to be declared in a federal forum." *Id.* (citation omitted). The Supreme Court also re-affirmed that state courts are "competent to apply federal law, to the extent it is relevant," in deciding actions under their jurisdiction. *See id.*

Here, the federal issue is not substantial for three reasons the Supreme Court has outlined: (1) the determination is one of fact—not law; (2) it will not result in precedent that controls numerous other cases; and (3) it involves federal common law, not a federal statute. First, the federal issue is whether the experimental use exception was legally and factually available to Minton's attorneys in the underlying patent infringement case. The answer to this question is purely factual and turns on the nature of the TEXCEN lease between Minton and R.M. Stark & Co.: was that particular lease for experimental purposes (thus making the exception available) or for commercial ends (rendering it unavailable)? Because the federal issue is one of fact, it is not substantial. *See Empire,* 547 U.S. at 700–01, 126 S.Ct. 2121 (noting that *Grable* claim was subject to federal jurisdiction because it was a "nearly pure issue of law" but that claim at issue in *Empire* was not subject to federal jurisdiction because it was "fact-bound and situation-specific"). Second, the experimental use exception is well defined. It need only be applied to the facts of this case. A determination of whether the experimental use exception applies to the lease will not result in an important precedent. *Id.* at 700, 126 S.Ct. 2121 (citing *Grable,* 545 U.S. at 313, 125 S.Ct. 2363) (noting that *Grable* claim was subject to federal jurisdiction because it "would be controlling in numerous other cases" but that claim at issue in

*Empire* was not subject to federal jurisdiction because the bottom-line practical issue was the share of settlement property from a state court proceeding). Third, the experimental use exception is a creature of federal common law, not of any statute. *See id.* (noting that *Grable* claim was subject to federal jurisdiction because it involved a federal statute and IRS action but that claim at issue in *Empire* was not subject to federal jurisdiction because it involved a federal common law determination in a state law claim). Because the federal issue here is one of fact (not law), will not control numerous other cases, and involves only federal common law and not a federal statute, the federal issue here is not substantial.

## C. The Court's Holding Upsets the Division Between Federal and State Courts

Finally, the Court's holding today upsets the division between federal and state courts envisioned by Congress. Legal malpractice, along with the regulation of the practice of law generally, has traditionally been a matter for the states. *See Singh,* 538 F.3d at 339 ("Legal malpractice has traditionally been the domain of state law, and federal law rarely interferes with the power of state authorities to regulate the practice of law."). It was not the purpose of Congress to encroach on this state sphere when it enacted section 1338; rather, the plain language of the statute simply indicates an intent to assure federal jurisdiction over, and uniform interpretation of, federal intellectual property law. It is only under the gloss applied to that language by later decisions of the Federal Circuit that we could imagine that a legal malpractice action "arises under" patent law. Common sense tells us that this is a matter for state courts. And our sense on this matter is confirmed by the oft-quoted wisdom of Justice Cardozo:

What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation.... If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic, and those that are collateral, between disputes that are necessary and those that are merely possible.

*Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 117–18, 57 S.Ct. 96, 81 L.Ed. 70 (1936), *quoted with approval in Grable*, 545 U.S. at 313, 125 S.Ct. 2363.

In Justice Cardozo's terms, the federal issue here is collateral, not basic. This is a legal malpractice case, litigated after final judgment in the original, federal case. Resolution of the malpractice claim in question does not impact any live patent law claims. *Cf. Singh*, 538 F.3d at 341 (noting that a legal malpractice action "will in no way disturb or interfere with the judgments of the federal courts" regarding the underlying federal intellectual property lawsuit). Moreover, it is unlikely that the legal malpractice opinions of Texas courts will in any way disrupt the uniformity of patent law that Congress sought by enacting section 1338; on the merits of actual patent lawsuits, federal courts will no doubt look first to federal patent precedents, not Texas legal malpractice cases.

Unfortunately, the Federal Circuit has not remained faithful to the Supreme Court's federalism inquiry in the context of malpractice decisions arising from patent cases. Instead, under the Federal Circuit's approach, the federalism element is simply an invocation of the need for uniformity in patent law. In *Air Measurement*, the federalism discussion was limited to the benefits of a federal forum, the need for uniformity in patent law, and the fact that patents are issued by a federal agency. *See Air Measurement*, 504 F.3d at 1272. There was no consideration of what effect asserting exclusive federal jurisdiction would have over the balance between the state and federal judiciaries intended by Congress. *See id.; see also USPPS* 647 F.3d at 281 n. 4 ("*Air Measurement Technologies* is silent as to the *Grable* question of federalism...."). Rather, the court simply noted "[i]n § 1338, Congress considered the federal-state division of labor and struck a balance in favor of this court's entertaining patent infringement." *Air Measurement*, 504 F.3d at 1272. Of course, there is no doubt that Congress wants the Federal Circuit to "entertain[ ] patent infringement," but that is not the issue under *Grable*'s federalism analysis: what is required is a consideration of the impact on our federal system.

In *Immunocept*, application of the *Grable* factors, and particularly the federalism analysis, was equally cursory. The Federal Circuit concluded that the federalism element was met simply because litigants benefit from the expertise of federal judges, and Congress intended to "remove non-uniformity in the patent law." *Immunocept*, 504 F.3d at 1285–86. Again, there was no consideration of the impact on the balance between state and federal courts, as required by the Supreme Court in precedents such as *Grable* and *Empire*.[3]

---

**3.** In *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355 (Fed.Cir.2010), a legal malpractice case derived from a patent application, the Federal Circuit went even further and neither cited *Grable* nor mentioned its factors at all. *See generally id.* This approach was repeated in *Warrior Sports*, another patent-law legal malpractice case, which likewise made no

This is particularly disheartening given the potential consequences on the division between state and federal courts beyond the purview of patent disputes. The impact of the Court's decision on other potential types of embedded question cases is relevant in conducting the federalism inquiry required in this case. *See Grable*, 545 U.S. at 317, 125 S.Ct. 2363 ("'[I]n exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system.'") (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). In *Merrell Dow*, the Supreme Court found the federal balance was upset in a case, as here, where there was no federal cause of action. *See Grable*, 545 U.S. at 318–19, 125 S.Ct. 2363. The Court noted that asserting federal jurisdiction over the state law claim at issue "would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.* at 318, 125 S.Ct. 2363. "For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." *Id.*

This point is telling, because the Supreme Court's fears have already been realized in *USPPS*. There, the Fifth Circuit adopted the reasoning applied by the Federal Circuit in *Air Measurement* and *Immunocept* to reach the same outcome in a fraud and breach of fiduciary duty case involving patent law. *See USPPS*, 647 F.3d at 284.[4] Put another way, the reach of the Federal Circuit's section 1338 reasoning is uncabined, and can potentially sweep any state law case that touches on substantive patent law (or, for that matter, the other areas of law covered by section 1338, such as copyright and trademarks) irrevocably into federal court.

In contrast to *Air Measurement* and *Immunocept*, *Singh* correctly applied the Supreme Court's federal question jurisprudence governing embedded question cases to a section 1338 trademark legal malpractice case, with a proper analysis of the federalism element. *Singh* discussed at length the *Grable* factors of substantialness and federalism. *See Singh*, 538 F.3d at 337–41. As for the first, the court noted that trademark law has an entirely differ-

---

mention of *Grable* or federalism. *See generally Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 631 F.3d 1367 (Fed.Cir.2011).

**4.** Although the Fifth Circuit previously expressed skepticism about the Federal Circuit's approach, and declined to apply it to a legal-malpractice case involving trademarks and section 1338, *see Singh*, 538 F.3d at 340, it recently adopted the *Air Measurement/Immunocept* reasoning, *see USPPS*, 647 F.3d at 278–81. Although *USPPS* mentioned the treatment of *Grable* (described above) found in *Air Measurement* and *Immunocept*, and promised to be "sensitive" to federalism issues, *see id.* at 278 n. 1, *USPPS* contains no federalism analysis of its own. *See generally id.* Rather, the *USPPS* opinion simply quoted *Immunocept* on the federal interest in patent

law uniformity, and then applied as binding precedent the Fifth Circuit's own opinion in *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 291 (5th Cir.1997). *See USPPS*, 647 F.3d at 282. *Scherbatskoy* in turn conducted no federalism analysis, *see* 125 F.3d at 291; but that is unsurprising because it was decided some eight years *prior* to *Grable*. Given *Grable*'s landmark status, it is thus curious that *USPPS* relies so heavily on *Scherbatskoy* on this point. Other than stating "[i]n so holding, we conform ... to *Singh*'s requirement of balancing the federal and state interests involved," *USPPS* made no other analysis of the *Grable* factors, thus carrying forward the Federal Circuit's misguided approach. 647 F.3d at 282.

ent purpose from state malpractice law, and further that the trademark issue in question was predominantly one of fact, not law, rendering the trademark issue insubstantial under *Grable*. *Id.* at 339. *Singh* then conducted a careful and substantive federalism analysis, one that considered the impact on the division of labor between state and federal courts. *See id.* at 339–40. The court observed that legal malpractice traditionally is a state law matter, and that "federal law rarely interferes with the power of state authorities to regulate the practice of law." *Id.* at 339. The court further observed that exerting federal jurisdiction would "constitute a substantial usurpation of state authority in an area in which states have traditionally been dominant." *Id.* The court also expressed concern, echoing the Supreme Court's fears in *Grable* and *Merrell Dow*, that adopting such reasoning in one type of federal question case could lead to its application in other types of embedded question cases.[5] *See id.* at 340 ("Because all Texas malpractice plaintiffs must prove that they would have prevailed in their prior suits, federal jurisdiction could extend to every instance in which a lawyer commits alleged malpractice during the litigation of a federal claim."). As mentioned previously, this concern has ironically been borne out in *USPPS*, a subsequent Fifth Circuit case that applied the Federal Circuit's reasoning in patent law malpractice cases to a fraud and breach of fiduciary duty case. *See USPPS*, 647 F.3d at 278–81.

In sum, the cases relied on by the Court are not persuasive authority because they either ignore the standard required by United States Supreme Court precedent or apply it in a conclusory manner. The Court therefore errs when it concludes, based on the importance of uniformity in patent law emphasized in *Air Measurement* and *Immunocept*, that the balance between state and federal courts is not upset by allowing jurisdiction here.

## II. Conclusion

The Federal Circuit has pursued a particular mandate—to achieve uniformity in

5. The *Singh* court is certainly not the only court to have examined the *Grable* factors and concluded that there is no exclusive federal jurisdiction over claims such as this. *See, e.g., New Tek Mfg., Inc. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005) (finding no federal jurisdiction over malpractice claim and holding "[w]hen patent issues are merely implicated incidentally in a cause of action, however, federal courts do not have jurisdiction of the case pursuant to § 1338"); *E–Pass Tech., Inc. v. Moses & Singer, LLP*, 189 Cal. App.4th 1140, 1152, 117 Cal.Rptr.3d 516 (Cal. Ct.App.2010), review denied (Feb. 23, 2011) (finding no federal jurisdiction over malpractice claim and holding that "to the extent that the subject matter of patent law is relevant to the determination of the professional negligence claim, it does not present a question of patent law that is substantial") (citations omitted); *Roof Technical Servs., Inc. v. Hill*, 679 F.Supp.2d 749, 753–54 (N.D.Tex.2010) (finding no federal jurisdiction over malpractice claim and holding "even if the court must decide patent law issues, those decisions will not create or destroy any patent rights such that uniformity in the way patents are issued or enforced will be threatened"); *Genelink Biosciences, Inc. v. Colby*, 722 F.Supp.2d 592 (D.N.J.2010) (finding no federal jurisdiction over malpractice claim involving patent law); *Danner, Inc. v. Foley & Lardner, LLP*, No. 09–1220–JE, 2010 WL 2608292, at *5 (D.Or. Mar. 15, 2010) (finding no federal jurisdiction over malpractice claim and holding that because "plaintiff's malpractice claim ... is supported by theories that do not depend on patent law or the resolution of patent issues, its claim does not 'arise' under patent laws"); *Anderson v. Johnson*, No. 08–CV–6202, 2009 WL 2244622, at *3 (N.D.Ill. July 27, 2009) (finding no federal jurisdiction over malpractice claim and holding that a "federal court's adjudication of [a] state malpractice claim [involving copyright law] would disturb the balance of federal and state judicial responsibilities").

patent law. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574 (Fed. Cir.1984) ("This court ... has a mandate to achieve uniformity in patent matters."). The Federal Circuit appears to be animated by this goal when finding section 1338 jurisdiction over state legal malpractice claims. *See Immunocept,* 504 F.3d at 1285; *Air Measurement,* 504 F.3d at 1272. The Federal Circuit's focus on this mandate is understandable, but uniformity in patent law is not the be-all and end-all of jurisprudence. It must give way to the contours of federal question jurisdiction provided by the Supreme Court. *See Grable,* 545 U.S. at 312–15, 125 S.Ct. 2363. In turn, this Court has its own mandate, of at least equal importance to that of the Federal Circuit. We owe a duty to the people of this state to exercise the judicial power, *see* TEX. CONST. art. V, §§ 1, 3, and that duty includes vital matters such as ensuring consistency and certainty in the civil law of the state, *see* TEX. GOV'T CODE § 22.001, and regulating the practice of law, *id.* § 81.011(c). Accordingly, we should not risk the confusion and inconsistency that will result from having two sets of binding precedent in Texas legal malpractice law—one stemming from this Court and the other courts of this state, and another, entirely outside of our control after today's opinion, developing under the direction of the Federal Circuit, largely uninformed by the deep roots of Texas jurisprudence and the requirements of the Texas Constitution.

This Court should not be quick to follow Federal Circuit case law that fails to follow the test set forth by the Supreme Court. Because this case fails to meet three of the four elements required by the Supreme Court for federal-element "arising under" jurisdiction, the court of appeals was correct when it held that exclusive federal patent jurisdiction does not lie here. I therefore respectfully dissent.